(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* GONZALEZ-LOPEZ

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 05–352. Argued April 18, 2006—Decided June 26, 2006

Respondent hired attorney Low to represent him on a federal drug charge. The District Court denied Low's application for admission *pro hac vice* on the ground that he had violated a professional conduct rule and then, with one exception, prevented respondent from meeting or consulting with Low throughout the trial. The jury found respondent guilty. Reversing, the Eighth Circuit held that the District Court erred in interpreting the disciplinary rule, that the court's refusal to admit Low therefore violated respondent's Sixth Amendment right to paid counsel of his choosing, and that this violation was not subject to harmless-error review.

*Held:* A trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to reversal of his conviction. Pp. 3–12.

  (a) In light of the Government's concession of erroneous deprivation, the trial court's error violated respondent's Sixth Amendment right to counsel of choice. The Court rejects the Government's contention that the violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the meaning of *Strickland* v. *Washington,* 466 U. S. 668, 691–696—*i.e.,* that his performance was deficient and the defendant was prejudiced by it—or the defendant can demonstrate that substitute counsel's performance, while not deficient, was not as good as what his counsel of choice would have provided, creating a "reasonable probability that . . . the result . . . would have been different," *id.,* at 694. To support these propositions, the Government emphasizes that the right to counsel is accorded to ensure that the accused receive a fair trial, *Mickens* v. *Taylor,* 535 U. S. 162, 166, and asserts that a trial is not unfair unless a defendant has been prejudiced. The right to counsel

of choice, however, commands not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. Cf. *Crawford* v. *Washington*, 541 U. S. 36, 61. That right was violated here; no additional showing of prejudice is required to make the violation "complete." Pp. 3–7.

   (b) The Sixth Amendment violation is not subject to harmless-error analysis. Erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Sullivan* v. *Louisiana,* 508 U. S. 275, 282. It "def[ies] analysis by 'harmless error' standards" because it "affec[ts] the framework within which the trial proceeds" and is not "simply an error in the trial process itself." *Arizona* v. *Fulminante,* 499 U. S. 279, 309–310. Different attorneys will pursue different strategies with regard to myriad trial matters, and the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides to go to trial. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. This inquiry is not comparable to that required to show that a counsel's deficient performance prejudiced a defendant. Pp. 8–11.

   (c) Nothing in the Court's opinion casts any doubt or places any qualification upon its previous holdings limiting the right to counsel of choice and recognizing trial courts' authority to establish criteria for admitting lawyers to argue before them. However broad a trial court's discretion may be, this Court accepts the Government's concession that the District Court erred. Pp. 11–12.

399 F. 3d 924, affirmed and remanded.

   SCALIA, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and KENNEDY and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–352

UNITED STATES, PETITIONER *v.* CUAUHTEMOC
GONZALEZ-LOPEZ

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[June 26, 2006]

JUSTICE SCALIA delivered the opinion of the Court.

We must decide whether a trial court's erroneous depri-
vation of a criminal defendant's choice of counsel entitles
him to a reversal of his conviction.

I

Respondent Cuauhtemoc Gonzalez-Lopez was charged
in the Eastern District of Missouri with conspiracy to
distribute more than 100 kilograms of marijuana. His
family hired attorney John Fahle to represent him. After
the arraignment, respondent called a California attorney,
Joseph Low, to discuss whether Low would represent him,
either in addition to or instead of Fahle. Low flew from
California to meet with respondent, who hired him.

Some time later, Low and Fahle represented respondent
at an evidentiary hearing before a Magistrate Judge. The
Magistrate Judge accepted Low's provisional entry of
appearance and permitted Low to participate in the hear-
ing on the condition that he immediately file a motion for
admission *pro hac vice*. During the hearing, however, the
Magistrate Judge revoked the provisional acceptance on
the ground that, by passing notes to Fahle, Low had vio-

lated a court rule restricting the cross-examination of a witness to one counsel.

The following week, respondent informed Fahle that he wanted Low to be his only attorney. Low then filed an application for admission *pro hac vice*. The District Court denied his application without comment. A month later, Low filed a second application, which the District Court again denied without explanation. Low's appeal, in the form of an application for a writ of mandamus, was dismissed by the United States Court of Appeals for the Eighth Circuit.

Fahle filed a motion to withdraw as counsel and for a show-cause hearing to consider sanctions against Low. Fahle asserted that, by contacting respondent while respondent was represented by Fahle, Low violated Mo. Rule of Professional Conduct 4–4.2 (1993), which prohibits a lawyer "[i]n representing a client" from "communicat[ing] about the subject of the representation with a party . . . represented by another lawyer" without that lawyer's consent. Low filed a motion to strike Fahle's motion. The District Court granted Fahle's motion to withdraw and granted a continuance so that respondent could find new representation. Respondent retained a local attorney, Karl Dickhaus, for the trial. The District Court then denied Low's motion to strike and, for the first time, explained that it had denied Low's motions for admission *pro hac vice* primarily because, in a separate case before it, Low had violated Rule 4–4.2 by communicating with a represented party.

The case proceeded to trial, and Dickhaus represented respondent. Low again moved for admission and was again denied. The Court also denied Dickhaus's request to have Low at counsel table with him and ordered Low to sit in the audience and to have no contact with Dickhaus during the proceedings. To enforce the Court's order, a United States Marshal sat between Low and Dickhaus at

trial. Respondent was unable to meet with Low through-out the trial, except for once on the last night. The jury found respondent guilty.

After trial, the District Court granted Fahle's motion for sanctions against Low. It read Rule 4–4.2 to forbid Low's contact with respondent without Fahle's permission. It also reiterated that it had denied Low's motions for admission on the ground that Low had violated the same Rule in a separate matter.

Respondent appealed, and the Eighth Circuit vacated the conviction. 399 F. 3d 924 (2005). The Court first held that the District Court erred in interpreting Rule 4–4.2 to prohibit Low's conduct both in this case and in the separate matter on which the District Court based its denials of his admission motions. The District Court's denials of these motions were therefore erroneous and violated respondent's Sixth Amendment right to paid counsel of his choosing. See *id.*, at 928–932. The Court then concluded that this Sixth Amendment violation was not subject to harmless-error review. See *id.*, at 932–935. We granted certiorari. 546 U. S. ___ (2006).

## II

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him. See *Wheat* v. *United States,* 486 U. S. 153, 159 (1988). Cf. *Powell* v. *Alabama,* 287 U. S. 45, 53 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice"). The Government here agrees, as it has previously, that "the Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney

whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered* v. *United States,* 491 U. S. 617, 624–625 (1989). To be sure, the right to counsel of choice "is circumscribed in several important respects." *Wheat*, *supra*, at 159. But the Government does not dispute the Eighth Circuit's conclusion in this case that the District Court erroneously deprived respondent of his counsel of choice.

The Government contends, however, that the Sixth Amendment violation is not "complete" unless the defendant can show that substitute counsel was ineffective within the meaning of *Strickland* v. *Washington,* 466 U. S. 668, 691–696 (1984)—*i.e.*, that substitute counsel's performance was deficient and the defendant was prejudiced by it. In the alternative, the Government contends that the defendant must at least demonstrate that his counsel of choice would have pursued a different strategy that would have created a "reasonable probability that . . . the result of the proceedings would have been different," *id.*, at 694—in other words, that he was prejudiced within the meaning of *Strickland* by the denial of his counsel of choice even if substitute counsel's performance was not constitutionally deficient.[1] To support these propositions, the Government points to our prior cases, which note that the right to counsel "has been accorded . . . not for its own

--------

[1] The dissent proposes yet a third standard—viz., that the defendant must show "'an identifiable difference in the quality of representation between the disqualified counsel and the attorney who represents the defendant at trial.'" *Post,* at 4 (opinion of ALITO, J.). That proposal suffers from the same infirmities (outlined later in text) that beset the Government's positions. In addition, however, it greatly impairs the clarity of the law. How is a lower-court judge to know what an "identifiable difference" consists of? Whereas the Government at least appeals to *Strickland* and the case law under it, the most the dissent can claim by way of precedential support for its rule is that it is "consistent with" cases that never discussed the issue of prejudice. *Id.*

sake, but for the effect it has on the ability of the accused to receive a fair trial." *Mickens* v. *Taylor,* 535 U. S. 162, 166 (2002) (internal quotation marks omitted). A trial is not unfair and thus the Sixth Amendment is not violated, the Government reasons, unless a defendant has been prejudiced.

Stated as broadly as this, the Government's argument in effect reads the Sixth Amendment as a more detailed version of the Due Process Clause—and then proceeds to give no effect to the details. It is true enough that the purpose of the rights set forth in that Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair. What the Government urges upon us here is what was urged upon us (successfully, at one time, see *Ohio* v. *Roberts*, 448 U. S. 56 (1980)) with regard to the Sixth Amendment's right of confrontation—a line of reasoning that "abstracts from the right to its purposes, and then eliminates the right." *Maryland* v. *Craig,* 497 U. S. 836, 862 (1990) (SCALIA, J., dissenting). Since, it was argued, the purpose of the Confrontation Clause was to ensure the reliability of evidence, so long as the testimonial hearsay bore "indicia of reliability," the Confrontation Clause was not violated. See *Roberts, supra,* at 65–66. We rejected that argument (and our prior cases that had accepted it) in *Crawford* v. *Washington*, 541 U. S. 36 (2004), saying that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.,* at 61.

So also with the Sixth Amendment right to counsel of choice. It commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements

of a fair trial largely through the several provisions of the
Sixth Amendment, including the Counsel Clause." *Strick-
land, supra,* at 684–685. In sum, the right at stake here is
the right to counsel of choice, not the right to a fair trial;
and that right was violated because the deprivation of
counsel was erroneous. No additional showing of preju-
dice is required to make the violation "complete."[2]

The cases the Government relies on involve the right to
the effective assistance of counsel, the violation of which
generally requires a defendant to establish prejudice. See,
*e.g., Strickland, supra,* at 694; *Mickens*, *supra,* at 166;
*United States* v. *Cronic*, 466 U. S. 648 (1984). The earliest
case generally cited for the proposition that "the right to
counsel is the right to the effective assistance of counsel,"
*McMann* v. *Richardson*, 397 U. S. 759, 771, n. 14 (1970),
was based on the Due Process Clause rather than on the
Sixth Amendment, see *Powell,* 287 U. S., at 57 (cited in
*e.g., McMann, supra,* at 771, n. 14). And even our recogni-
tion of the right to effective counsel within the Sixth
Amendment was a consequence of our perception that
representation by counsel "is critical to the ability of the
adversarial system to produce just results." *Strickland*,
*supra,* at 685. Having derived the right to effective repre-
sentation from the purpose of ensuring a fair trial, we
have, logically enough, also derived the limits of that right
from that same purpose. See *Mickens, supra,* at 166. The

————————

[2] The dissent resists giving effect to our cases' recognition, and the
Government's concession, that a defendant has a right to be defended
by counsel of his choosing. It argues that because the Sixth Amend-
ment guarantees the right to the "assistance of counsel," it is not
violated unless "the erroneous disqualification of a defendant's counsel
of choice . . . impair[s] the assistance that a defendant receives at trial."
*Post,* at 1–2 (opinion of ALITO, J.). But if our cases (and the Govern-
ment's concession) mean anything, it is that the Sixth Amendment is
violated when the erroneous disqualification of counsel "impair[s] the
assistance that a defendant receives at trial *[from the counsel that he
chose]."*

requirement that a defendant show prejudice in effective representation cases arises from the very nature of the specific element of the right to counsel at issue there— *effective* (not mistake-free) representation. Counsel cannot be "ineffective" unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to *effective* representation is not "complete" until the defendant is prejudiced. See *Strickland*, *supra*, at 685.

The right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial.[3] It has been regarded as the root meaning of the constitutional guarantee. See *Wheat,* 486 U. S., at 159; *Andersen* v. *Treat*, 172 U. S. 24 (1898). See generally W. Beaney, The Right to Counsel in American Courts 18–24, 27–33 (1955). Cf. *Powell*, *supra,* at 53. Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice— which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

_____

[3] In *Wheat* v. *United States,* 486 U. S. 153 (1988), where we formulated the right to counsel of choice and discussed some of the limitations upon it, we took note of the overarching purpose of fair trial in holding that the trial court has discretion to disallow a first choice of counsel that would create serious risk of conflict of interest. *Id.,* at 159. It is one thing to conclude that the right to counsel of choice may be limited by the need for fair trial, but quite another to say that the right does not exist unless its denial renders the trial unfair.

### III

Having concluded, in light of the Government's conces-
sion of erroneous deprivation, that the trial court violated
respondent's Sixth Amendment right to counsel of choice,
we must consider whether this error is subject to review
for harmlessness.  In *Arizona* v. *Fulminante*, 499 U. S. 279
(1991), we divided constitutional errors into two classes.
The first we called "trial error," because the errors "oc-
curred during presentation of the case to the jury" and
their effect may "be quantitatively assessed in the context
of other evidence presented in order to determine whether
[they were] harmless beyond a reasonable doubt."  *Id.*, at
307–308 (internal quotation marks omitted).  These in-
clude "most constitutional errors."  *Id.*, at 306.  The second
class of constitutional error we called "structural defects."
These "defy analysis by 'harmless-error' standards" be-
cause they "affec[t] the framework within which the trial
proceeds," and are not "simply an error in the trial process
itself."  *Id.*, at 309–310.[4]  See also *Neder* v. *United States*,

---

[4] The dissent criticizes us for our trial error/structural defect dichot-
omy, asserting that *Fulminante* never said that "trial errors are the
*only* sorts of errors amenable to harmless-error review, or that *all*
errors affecting the framework within which the trial proceeds are
structural," *post,* at 8 (opinion of ALITO, J.) (internal quotation marks
and citation omitted).  Although it is hard to read that case as doing
anything other than dividing constitutional error into two comprehen-
sive categories, our ensuing analysis in fact relies neither upon such
comprehensiveness nor upon trial error as the touchstone for the
availability of harmless-error review.  Rather, here, as we have done in
the past, we rest our conclusion of structural error upon the difficulty of
assessing the effect of the error.  See *Waller* v. *Georgia,* 467 U. S. 39,
49, n. 9 (1984) (violation of the public-trial guarantee is not subject to
harmlessness review because "the benefits of a public trial are fre-
quently intangible, difficult to prove, or a matter of chance"); *Vasquez* v.
*Hillery,* 474 U. S. 254, 263 (1986) ("[W]hen a petit jury has been selected
upon improper criteria or has been exposed to prejudicial publicity, we

527 U. S. 1, 7–9 (1999). Such errors include the denial of counsel, see *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), the denial of the right of self-representation, see *McKaskle* v. *Wiggins*, 465 U. S. 168, 177–178, n. 8 (1984), the denial of the right to public trial, see *Waller* v. *Georgia,* 467 U. S. 39, 49, n. 9 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see *Sullivan* v. *Louisiana,* 508 U. S. 275 (1993).

We have little trouble concluding that erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Id.*, at 282. Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the "framework within which the trial proceeds," *Fulminante*, *supra,*

_____

have required reversal of the conviction because the effect of the violation cannot be ascertained"). The dissent would use "fundamental unfairness" as the sole criterion of structural error, and cites a case in which that was the determining factor, see *Neder* v. *United States*, 527 U. S. 1, 9 (1999) (quoted by the dissent, *post,* at 6). But this has not been the only criterion we have used. In addition to the above cases using difficulty of assessment as the test, we have also relied on the irrelevance of harmlessness, see *McKaskle* v. *Wiggins,* 465 U. S. 168, 177, n. 8 (1984) ("Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis"). Thus, it is the dissent that creates a single, inflexible criterion, inconsistent with the reasoning of our precedents, when it asserts that *only* those errors that *always* or *necessarily* render a trial fundamentally unfair and unreliable are structural, *post,* at 8.

at 310—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

The Government acknowledges that the deprivation of choice of counsel pervades the entire trial, but points out that counsel's ineffectiveness may also do so and yet we do not allow reversal of a conviction for that reason without a showing of prejudice. But the requirement of showing prejudice in ineffectiveness claims stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation *occurred*. A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied. Moreover, if and when counsel's ineffectiveness "pervades" a trial, it does so (to the extent we can detect it) through identifiable mistakes. We can assess how those mistakes affected the outcome. To determine the effect of wrongful denial of choice of counsel, however, we would not be looking for mistakes committed by the actual counsel, but for differences in the defense that would have been made by the rejected counsel—in matters ranging from questions asked on *voir dire* and cross-examination to such intangibles as argument style and relationship with the prosecutors. We would have to speculate upon what matters the rejected counsel would have handled differently—or indeed, would have handled the same but with the benefit of a more jury-pleasing courtroom style or a longstanding relationship of trust with the prosecutors. And then we would have to

speculate upon what effect those different choices or different intangibles might have had. The difficulties of conducting the two assessments of prejudice are not remotely comparable.[5]

## IV

Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. As the dissent too discusses, *post,* at 3, the right to counsel of choice does not extend to defendants who require counsel to be appointed for them. See *Wheat,* 486 U. S., at 159; *Caplin & Drysdale,* 491 U. S., at 624, 626. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. See *Wheat*, 486 U. S., at 159–160. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.*, at 163–164, and against the demands of its calendar, *Morris* v. *Slappy*, 461 U. S. 1, 11–12 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and

---

[5] In its discussion of the analysis that would be required to conduct harmless-error review, the dissent focuses on which counsel was "better." See *post,* at 7–8 (opinion of ALITO, J.). This focus has the effect of making the analysis look achievable, but it is fundamentally inconsistent with the principle (which the dissent purports to accept for the sake of argument) that the Sixth Amendment can be violated without a showing of harm to the quality of representation. Cf. *McKaskle, supra,* at 177, n. 8. By framing its inquiry in these terms and expressing indignation at the thought that a defendant may receive a new trial when his actual counsel was at least as effective as the one he wanted, the dissent betrays its misunderstanding of the nature of the right to counsel of choice and its confusion of this right with the right to effective assistance of counsel.

that legal proceedings appear fair to all who observe them." *Wheat*, *supra,* at 160. None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel. However broad a court's discretion may be, the Government has conceded that the District Court here erred when it denied respondent his choice of counsel. Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis.

*       *       *

The judgment of the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

No. 05–352

---

## UNITED STATES, PETITIONER *v.* CUAUHTEMOC GONZALEZ-LOPEZ

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 26, 2006]

JUSTICE ALITO, with whom THE CHIEF JUSTICE, JUSTICE KENNEDY, and JUSTICE THOMAS join, dissenting.

I disagree with the Court's conclusion that a criminal conviction must automatically be reversed whenever a trial court errs in applying its rules regarding *pro hac vice* admissions and as a result prevents a defendant from being represented at trial by the defendant's first-choice attorney. Instead, a defendant should be required to make at least *some* showing that the trial court's erroneous ruling adversely affected the quality of assistance that the defendant received. In my view, the majority's contrary holding is based on an incorrect interpretation of the Sixth Amendment and a misapplication of harmless-error principles. I respectfully dissent.

## I

The majority makes a subtle but important mistake at the outset in its characterization of what the Sixth Amendment guarantees. The majority states that the Sixth Amendment protects "the right of a defendant who does not require appointed counsel to choose who will represent him." *Ante*, at 3. What the Sixth Amendment actually protects, however, is the right to have *the assistance* that the defendant's counsel of choice is able to provide. It follows that if the erroneous disqualification of

a defendant's counsel of choice does not impair the assistance that a defendant receives at trial, there is no violation of the Sixth Amendment.[1]

The language of the Sixth Amendment supports this interpretation. The Assistance of Counsel Clause focuses on what a defendant is entitled to receive ("Assistance"), rather than on the identity of the provider. The background of the adoption of the Sixth Amendment points in the same direction. The specific evil against which the Assistance of Counsel Clause was aimed was the English common-law rule severely limiting a felony defendant's ability to be assisted by counsel. *United States* v. *Ash*, 413 U. S. 300, 306 (1973). "[T]he core purpose of the counsel guarantee was to assure 'Assistance' at trial," *id.*, at 309, and thereby "to assure fairness in the adversary criminal process," *United States* v. *Morrison*, 449 U. S. 361, 364 (1981). It was not "the essential aim of the Amendment . . . to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat* v. *United States*, 486 U. S. 153, 159 (1988); cf. *Morris* v. *Slappy*, 461 U. S. 1, 14 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel").

There is no doubt, of course, that the right "to have the Assistance of Counsel" carries with it a limited right to be represented by counsel of choice. At the time of the adoption of the Bill of Rights, when the availability of appointed counsel was generally limited,[2] that is how the

_____

[1] This view is consistent with the Government's concession that "[t]he Sixth Amendment . . . encompasses a non-indigent defendant's right to select counsel who will represent him in a criminal prosecution," Brief for United States 11, though this right is "circumscribed in several important respects," *id.*, at 12 (citation and internal quotation marks omitted).

[2] See Act of Apr. 30, 1790, ch. 9, §29, 1 Stat. 118 (providing for appointment of counsel in capital cases); *Betts* v. *Brady*, 316 U. S. 455,

right inevitably played out: A defendant's right to have the assistance of counsel necessarily meant the right to have the assistance of whatever counsel the defendant was able to secure. But from the beginning, the right to counsel of choice has been circumscribed.

For one thing, a defendant's choice of counsel has always been restricted by the rules governing admission to practice before the court in question. The Judiciary Act of 1789 made this clear, providing that parties "in all the courts of the United States" had the right to "the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct cases therein." Ch. 20, §35, 1 Stat. 92. Therefore, if a defendant's first-choice attorney was not eligible to appear under the rules of a particular court, the defendant had no right to be represented by that attorney. Indeed, if a defendant's top 10 or top 25 choices were all attorneys who were not eligible to appear in the court in question, the defendant had no right to be represented by any of them. Today, rules governing admission to practice before particular courts continue to limit the ability of a criminal defendant to be represented by counsel of choice. See *Wheat,* 486 U. S., at 159.

The right to counsel of choice is also limited by conflict-of-interest rules. Even if a defendant is aware that his or her attorney of choice has a conflict, and even if the defendant is eager to waive any objection, the defendant has no constitutional right to be represented by that attorney. See *id.*, at 159–160.

Similarly, the right to be represented by counsel of choice can be limited by mundane case-management considerations. If a trial judge schedules a trial to begin on a particular date and defendant's counsel of choice is already committed for other trials until some time thereaf-

_____

467, n. 20 (1942) (surveying state statutes).

ter, the trial judge has discretion under appropriate cir-
cumstances to refuse to postpone the trial date and
thereby, in effect, to force the defendant to forgo counsel of
choice. See, *e.g.*, *Slappy*, *supra; United States* v. *Hughey*,
147 F. 3d 423, 428–431 (CA5 1998).

These limitations on the right to counsel of choice are
tolerable because the focus of the right is the quality of the
representation that the defendant receives, not the iden-
tity of the attorney who provides the representation.
Limiting a defendant to those attorneys who are willing,
available, and eligible to represent the defendant still
leaves a defendant with a pool of attorneys to choose
from—and, in most jurisdictions today, a large and diverse
pool. Thus, these restrictions generally have no adverse
effect on a defendant's ability to secure the best assistance
that the defendant's circumstances permit.

Because the Sixth Amendment focuses on the quality of
the assistance that counsel of choice would have provided,
I would hold that the erroneous disqualification of counsel
does not violate the Sixth Amendment unless the ruling
diminishes the quality of assistance that the defendant
would have otherwise received. This would not require a
defendant to show that the second-choice attorney was
constitutionally ineffective within the meaning of *Strick-
land* v. *Washington*, 466 U. S. 668 (1984). Rather, the
defendant would be entitled to a new trial if the defendant
could show "an identifiable difference in the quality of
representation between the disqualified counsel and the
attorney who represents the defendant at trial." *Rodri-
guez* v. *Chandler*, 382 F. 3d 670, 675 (CA7 2004), cert.
denied, 543 U. S. 1156 (2005).

This approach is fully consistent with our prior deci-
sions. We have never held that the erroneous disqualifica-
tion of counsel violates the Sixth Amendment when there
is no prejudice, and while we have stated in several cases
that the Sixth Amendment protects a defendant's right to

counsel of choice, see *Caplin & Drysdale, Chartered* v. *United States*, 491 U. S. 617, 624–625 (1989); *Wheat, supra*, at 159; *Powell* v. *Alabama,* 287 U. S. 45, 53 (1932), we had no occasion in those cases to consider whether a violation of this right can be shown where there is no prejudice. Nor do our opinions in those cases refer to that question. It is therefore unreasonable to read our general statements regarding counsel of choice as addressing the issue of prejudice.[3]

————————

[3] *Powell* is the case generally cited as first noting a defendant's right to counsel of choice. *Powell* involved an infamous trial in which the defendants were prevented from obtaining any counsel of their choice and were instead constrained to proceed with court-appointed counsel of dubious effectiveness. We held that this denied them due process and that "a fair opportunity to secure counsel of [one's] own choice" is a necessary concomitant of the right to counsel. 287 U. S., at 53; cf. *id.*, at 71 ("[T]he failure of the trial court to give [petitioners] reasonable time and opportunity to secure counsel was a clear denial of due process"). It is clear from the facts of the case that we were referring to the denial of the opportunity to choose *any* counsel, and we certainly said nothing to suggest that a violation of the right to counsel of choice could be established without any showing of prejudice.

In *Wheat*, we held that the trial judge had not erred in declining the defendant's waiver of his right to conflict-free counsel, and therefore we had no need to consider whether an incorrect ruling would have required reversal of the defendant's conviction in the absence of a showing of prejudice. We noted that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment," 486 U. S., at l59, but we went on to stress that this right "is circumscribed in several important respects," *ibid.*, including by the requirement of bar membership and rules against conflicts of interest. *Wheat* did not suggest that a violation of the limited Sixth Amendment right to counsel of choice can be established without showing prejudice, and our statements about the Sixth Amendment's "purpose" and "essential aim"—providing effective advocacy and a fair trial, *ibid.*—suggest the opposite.

Finally, in *Caplin & Drysdale*, we held that the challenged action of the trial judge—entering an order forfeiting funds that the defendant had earmarked for use in paying his attorneys—had been proper, and, accordingly, we had no occasion to address the issue of prejudice. We recognized that "the Sixth Amendment guarantees a defendant the

## II

But even accepting, as the majority holds, that the erroneous disqualification of counsel of choice always violates the Sixth Amendment, it still would not follow that reversal is required in all cases. The Constitution, by its terms, does not mandate any particular remedy for violations of its own provisions. Instead, we are bound in this case by Federal Rule of Criminal Procedure 52(a), which instructs federal courts to "disregar[d]" "[a]ny error . . . which does not affect substantial rights." See also 28 U. S. C. §2111; *Chapman* v. *California,* 386 U. S. 18, 22 (1967). The only exceptions we have recognized to this rule have been for "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.'" *Neder* v. *United States,* 527 U. S. 1, 7 (1999) (quoting *Arizona* v. *Fulminante,* 499 U. S. 279, 309 (1991)); see also *Chapman, supra,* at 23. "Such errors . . . 'necessarily render a trial fundamentally unfair' [and] deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder, supra,* at 8–9 (quoting *Rose* v. *Clark,* 478 U. S. 570, 577–578 (1986) (second omission in original)); see also *ante*, at 9 (listing such errors).

Thus, in *Neder*, we rejected the argument that the omission of an element of a crime in a jury instruction "*necessarily* render[s] a criminal trial fundamentally unfair or

_____

right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds," 491 U. S., at 624–625, but we added that "[w]hatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of . . . counsel,'" *id.,* at 626 (omission in original).

an unreliable vehicle for determining guilt or innocence." 527 U. S., at 9. In fact, in that case, "quite the opposite [was] true: Neder was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense . . . ." *Ibid.*

Neder's situation—with an impartial judge, the correct standard of proof, assistance of counsel, and a fair jury—is much like respondent's. Fundamental unfairness does not inexorably follow from the denial of first-choice counsel. The "decision to retain a particular lawyer" is "often uninformed," *Cuyler* v. *Sullivan*, 446 U. S. 335, 344 (1980); a defendant's second-choice lawyer may thus turn out to be better than the defendant's first-choice lawyer. More often, a defendant's first- and second-choice lawyers may be simply indistinguishable. These possibilities would not justify violating the right to choice of counsel, but they do make me hard put to characterize the violation as "*always* render[ing] a trial unfair," *Neder*, *supra*, at 9. Fairness may not limit the right, see *ante*, at 5, but it does inform the remedy.

Nor is it always or nearly always impossible to determine whether the first choice would have provided better representation than the second choice. There are undoubtedly cases in which the prosecution would have little difficulty showing that the second-choice attorney was better qualified than or at least as qualified as the defendant's initial choice, and there are other cases in which it will be evident to the trial judge that any difference in ability or strategy could not have possibly affected the outcome of the trial.

Requiring a defendant to fall back on a second-choice attorney is not comparable to denying a defendant the right to be represented by counsel at all. Refusing to permit a defendant to receive the assistance of any counsel

is the epitome of fundamental unfairness, and as far as the effect on the outcome is concerned, it is much more difficult to assess the effect of a complete denial of counsel than it is to assess the effect of merely preventing representation by the defendant's first-choice attorney. To be sure, when the effect of an erroneous disqualification is hard to gauge, the prosecution will be unable to meet its burden of showing that the error was harmless beyond a reasonable doubt. But that does not justify eliminating the possibility of showing harmless error in all cases.

The majority's focus on the "trial error"/"structural defect" dichotomy is misleading. In *Fulminante*, we used these terms to denote two poles of constitutional error that had appeared in prior cases; trial errors always lead to harmless-error review, while structural defects always lead to automatic reversal. See 499 U. S., at 306–310. We did not suggest that trial errors are the *only* sorts of errors amenable to harmless-error review, or that *all* errors "affecting the framework within which the trial proceeds," *id.*, at 310, are structural. The touchstone of structural error is fundamental unfairness and unreliability. Automatic reversal is strong medicine that should be reserved for constitutional errors that "*always*" or "*necessarily*," *Neder, supra*, at 9 (emphasis in original), produce such unfairness.

## III

Either of the two courses outlined above—requiring at least some showing of prejudice, or engaging in harmless-error review—would avoid the anomalous and unjustifiable consequences that follow from the majority's two-part rule of error without prejudice followed by automatic reversal.

Under the majority's holding, a defendant who is erroneously required to go to trial with a second-choice attorney is automatically entitled to a new trial even if this

attorney performed brilliantly. By contrast, a defendant whose attorney was ineffective in the constitutional sense (*i.e.*, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," *Strickland*, 466 U. S., at 687) cannot obtain relief without showing prejudice.

Under the majority's holding, a trial court may adopt rules severely restricting *pro hac vice* admissions, cf. *Leis* v. *Flynt*, 439 U. S. 438, 443 (1979) *(per curiam),* but if it adopts a generous rule and then errs in interpreting or applying it, the error automatically requires reversal of any conviction, regardless of whether the erroneous ruling had any effect on the defendant.

Under the majority's holding, some defendants will be awarded new trials even though it is clear that the erroneous disqualification of their first-choice counsel did not prejudice them in the least. Suppose, for example, that a defendant is initially represented by an attorney who previously represented the defendant in civil matters and who has little criminal experience. Suppose that this attorney is erroneously disqualified and that the defendant is then able to secure the services of a nationally acclaimed and highly experienced criminal defense attorney who secures a surprisingly favorable result at trial— for instance, acquittal on most but not all counts. Under the majority's holding, the trial court's erroneous ruling automatically means that the Sixth Amendment was violated—even if the defendant makes no attempt to argue that the disqualified attorney would have done a better job. In fact, the defendant would still be entitled to a new trial on the counts of conviction even if the defendant publicly proclaimed after the verdict that the second attorney had provided better representation than any other attorney in the country could have possibly done.

Cases as stark as the above hypothetical are unlikely, but there are certainly cases in which the erroneous dis-

qualification of a defendant's first-choice counsel neither seriously upsets the defendant's preferences nor impairs the defendant's representation at trial. As noted above, a defendant's second-choice lawyer may sometimes be better than the defendant's first-choice lawyer. Defendants who retain counsel are frequently forced to choose among attorneys whom they do not know and about whom they have limited information, and thus a defendant may not have a strong preference for any one of the candidates. In addition, if all of the attorneys considered charge roughly comparable fees, they may also be roughly comparable in experience and ability. Under these circumstances, the erroneous disqualification of a defendant's first-choice attorney may simply mean that the defendant will be represented by an attorney whom the defendant very nearly chose initially and who is able to provide representation that is just as good as that which would have been furnished by the disqualified attorney. In light of these realities, mandating reversal without even a minimal showing of prejudice on the part of the defendant is unwarranted.

The consequences of the majority's holding are particularly severe in the federal system and in other court systems that do not allow a defendant to take an interlocutory appeal when counsel is disqualified. See *Flanagan* v. *United States*, 465 U. S. 259, 260 (1984). Under such systems, appellate review typically occurs after the defendant has been tried and convicted. At that point, if an appellate court concludes that the trial judge made a marginally incorrect ruling in applying its own *pro hac vice* rules, the appellate court has no alternative but to order a new trial—even if there is not even any claim of prejudice. The Sixth Amendment does not require such results.

Because I believe that some showing of prejudice is required to establish a violation of the Sixth Amendment,

I would vacate and remand to let the Court of Appeals determine whether there was prejudice. However, assuming for the sake of argument that no prejudice is required, I believe that such a violation, like most constitutional violations, is amenable to harmless-error review. Our statutes demand it, and our precedents do not bar it. I would then vacate and remand to let the Court of Appeals determine whether the error was harmless in this case.