**COLORADO MINING ASSOCIATION; Twentymile Coal Company; Mountain Coal Company, LLC; Colowyo Coal Company, L.P.; Oxbow Mining, LLC; Trapper Mining Inc.; and Bowie Resources, LLC, Plaintiffs–Appellants,**

v.

**Roxy HUBER, in her capacity as Executive Director of the Department of Revenue, State of Colorado; the Colorado Department of Revenue; and the State of Colorado, Defendants–Appellees.**

No. 09CA0132.

Colorado Court of Appeals, Div. IV.

Feb. 18, 2010.

Moye White LLP, Paul M. Seby, Marian C. Larsen, Denver, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Monica M. Márquez, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CONNELLY.

This appeal involves a constitutional challenge under section (4)(a) of the Colorado Taxpayer Bill of Rights (TABOR), Colo. Const. art. X, § 20(4)(a). Plaintiffs challenge the Department of Revenue's right to implement a pre-TABOR statute that formulaically adjusts the coal severance tax rate based on a general economic index. They contend a taxpayer vote was required because the Department's decision (after a fifteen-year hiatus) to use the statutory formula (1) caused a "tax rate increase" and (2) was "a tax policy change directly causing a net tax revenue gain." Because we agree with the first contention, we need not address the second. We hold that TABOR precludes increasing the coal severance tax rate without voter approval.

## I. Background

Since 1977, Colorado has imposed a tax on the "severance" (removal) of coal from the earth. The numerical tax rate has changed over the years. But the formula for calculating it has remained constant: a base rate (currently $0.36 per ton) is periodically adjusted based on changes to a broad economic index (now called the Producers' Price Index or "PPI"). See § 39–29–106, C.R.S.2009.

The statutory formula was in effect when Colorado voters passed TABOR in November 1992. At that time, the coal severance tax rate determined by the formula was $0.54 per ton.

Once TABOR took effect, the Department had to decide whether it could continue to use the statutory formula. In April 1993, it notified Colorado coal producers that the severance tax rate would remain at the (pre-TABOR) rate of $0.54 per ton of coal until further notice. The Department ultimately concluded that TABOR precluded the PPI-based changes. The tax rate thus remained static for fifteen years—until the changes giving rise to this lawsuit.

The Department revisited the issue after a 2006 state audit report noted its failure to apply the statutory adjustment formula. On July 6, 2007, in response to the Department's request for legal guidance, the Attorney General issued Formal Opinion No. 07–01 concluding that adjusting the tax based on the statutory formula did not violate TABOR and that the Department was obligated to make the adjustments. The Department then conducted rulemaking proceedings; it promulgated Regulation 39–29–106 stating, in accordance with the statute, that the tax rate would be adjusted based on the PPI. 1 Colo. Code Regs. 201–10.

The first post-TABOR adjustment took effect in January 2008. Based on more than fifteen years of PPI changes, the rate rose from $0.54 per ton to $0.76 per ton. The Department has continued to adjust the rate, which it posts on its website.

Plaintiffs filed this action in January 2008, shortly after the new rate took effect. The district court entered summary judgment rejecting their challenge. It issued a written opinion concluding that the adjustments were neither a "tax rate increase" nor a "tax policy change" covered by TABOR.

Plaintiffs timely appealed. The supreme court denied their C.A.R. 50(a) request for certiorari prior to this judgment.

## II. Discussion

Plaintiffs ask us to invalidate coal severance tax adjustments that the Department implemented pursuant to a statutory formula adopted by the General Assembly. We review constitutional issues de novo, *Hinojos–Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007), mindful of the extremely heavy burden placed on parties challenging the constitutionality of state statutes under TABOR. *Mesa County Bd. of County Commissioners v. State*, 203 P.3d 519, 527 (Colo.2009).

▄ We hold that TABOR precludes the challenged coal severance tax adjustments. Our holding is based on a simple syllogism:

(1) TABOR prohibits increasing tax rates without voter approval. Colo. Const. art. X, § 20(4)(a); *Nicholl v. E–470*

*Public Highway Auth.,* 896 P.2d 859, 867 (Colo.1995).

(2) Applying the statutory formula increased the coal severance tax rate (initially from $0.54 to $0.76 per ton) without voter approval.

(3) Therefore, TABOR was violated.

The simplicity of this syllogism is appropriate because we must "look to the intent of the voter as [TABOR] is an initiated constitutional provision." *Bruce v. City of Colorado Springs,* 129 P.3d 988, 995 (Colo.2006). TABOR's terms must be given their "practical, everyday meaning," and we must "consider how the typical voter would interpret 'tax [rate] increase.'" *Id.*

The Department attacks our syllogism's minor premise. In denying there was any "tax rate" increase, it contends "the coal severance tax rate is not a specific number, but rather, a *formula.*"

Contrary to the Department's contention, the "tax rate" *is* a specific "number" and *not* a "formula" yielding that number. The statute specifies "the rate of the tax" as the number of cents charged per ton of coal. *See* § 39–29–106(1) & (5) ("the rate of the tax shall be thirty-six cents per ton of coal," and this "tax rate" shall be adjusted based on the PPI). The Department's own website contains "Coal Tax Rate Charts" listing "tax rates" numerically, not formulaically: for example, the rate for January 2008 is $0.76. *See* http://www.colorado.gov/cs/Satellite/Revenue/REVX/ 1200408343430 (last visited Feb. 16, 2010).

The Department, relying on *Bolt v. Arapahoe County School District No. Six,* 898 P.2d 525 (Colo.1995), contends that voter approval is not required because the statute predated TABOR. *Bolt* held that voter approval was not required for a mill levy increase that effectively was imposed prior to TABOR when a school board adopted its yearly budget even though the increase was not officially certified until after TABOR. *Id.* at 537–40. Here, in contrast, the future tax burden had not even been determined prior to TABOR. The narrow holding in *Bolt,* involving the effective date of a one-time mill levy increase, is inapposite to this very different case.

The Department next argues that the increases fall outside TABOR because they occurred automatically based on an outside economic index. It contends the statute is no different from other taxing mechanisms that may result in increased revenues due to "external variables"—such as "fluctuations in the volume of coal production or the volume of sales"—without violating TABOR. The critical point, according to the Department, is not that "these external factors lie outside the control of the taxpayer, but rather, that they lie outside the control of the *government.*"

■ We reject the Department's analogy. The reason increased revenues from purely external variables do not trigger TABOR section (4)(a) is that the government has not increased a tax rate. (Even so, increased revenues beyond certain limits may trigger the section 7(d) refund provisions, Colo. Const. art. X, § 20(7)(d).) But nothing in TABOR distinguishes between whether a tax rate is increased directly by a statute or indirectly through application of a statutory formula tied to an outside index beyond the taxpayers' control. A tax rate increase requires voter approval in either situation.

■ The Department finally contends that because the statute simply accounts for the effects of inflation, it does not violate the purposes of TABOR. *Cf. Submission of Interrogatories on Senate Bill 93–74,* 852 P.2d 1, 4 (Colo.1993) (quoting Attorney General's description of TABOR's "principal purpose" as allowing voters to decide whether to impose "new tax burdens"). But TABOR's plain language requires voter approval to increase tax rates. We decline to allow notions of TABOR's general purposes to trump its plain language. *Cf. United States v. Gonzalez–Lopez,* 548 U.S. 140, 145, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (rejecting "a line of reasoning that 'abstracts from the right to its purposes, and then eliminates the right'") (quoting *Maryland v. Craig,* 497 U.S. 836, 862, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (Scalia, J., dissenting)).

### III.   Conclusion

The judgment is reversed, and the case is remanded.   The district court shall enter summary judgment for plaintiffs invalidating the challenged tax rate increases and shall conduct any further proceedings necessary to implement that judgment.

Judge WEBB and Judge TERRY concur.