[Cite as *State v. Gordon*, 2016-Ohio-5407.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103494**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEANDRE GORDON

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-594287-A and CR-15-596591-A

**BEFORE:** Kilbane, P.J., McCormack, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 18, 2016

**ATTORNEY FOR APPELLANT**

David L. Doughten
David L. Doughten Co. L.P.A.
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Eleina Thomas
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Deandre Gordon ("Gordon"), appeals from his convictions and sentence for aggravated robbery, kidnapping, and felonious assault following a joint trial in Cuyahoga C.P. Nos. CR-15-594287-A and CR-15-596591-A. For the reasons set forth below, we reverse the judgment in CR-15-594287-A and remand the matter for a retrial in this case.

{¶2} In March 2015, Gordon was charged in CR-15-594287-A with two counts of aggravated robbery, two counts of felonious assault, and one count of kidnapping. Each count carried one- and three-year firearm specifications. The charges allege that Gordon robbed Tevaughn Darling ("Darling") at gunpoint. In June 2015, Gordon was charged in CR-15-596591-A with intimidation of a witness. The charges allege that Gordon posted on social media an edited version of Darling's statement to the police, making him look like a snitch. Darling received threats because of the video.

{¶3} In June 2015, the state of Ohio ("state") filed a motion to join these two cases and a motion to disqualify Gordon's retained defense counsel. The state argued that the cases should be joined because the offenses are connected and part of the same criminal conduct. The state also argued that Gordon's defense counsel should be disqualified because he would be a material witness in the intimidation case. The trial court granted the state's joinder motion and disqualified defense counsel. The two cases then proceeded to a jury trial. The following evidence was adduced at the joint trial.

{¶4} Darling testified that on Friday, January 9, 2015, he celebrated his 36th birthday with Gordon, his girlfriend, Terri Buckner ("Buckner"), and other friends.[1] Darling has known Gordon since 2002 and thinks of him as his nephew. Upon returning home, Darling noticed that his car had been ransacked and his windows were broken, which was common in his neighborhood.

{¶5} Darling invited Gordon to stay over his house. Gordon stayed the remainder of the weekend through Monday afternoon. On Sunday, the two of them made a $1,500 bet on a football game. Darling won the $1,500. Gordon did not have the money to pay Darling. He told Darling that he needed money. Darling testified that Gordon did not have any money while they were celebrating his birthday. Darling paid for his birthday celebration in cash. Darling works in cash businesses, rehabbing houses, junking cars, and scrapping. On some days, he would make $2,500 a day scrapping cars.

{¶6} On Monday, January 12, 2015, Buckner took Darling's car to get it repaired. After Buckner left, only Darling and Gordon were in the house. At approximately 5:00 p.m., Gordon asked Darling what he was going to do for him. Darling said he would give Gordon some money. His plan was to give Gordon $1,000 from the bet and keep $500. Gordon then went into the bathroom and came out wearing a hood and carrying a .45 caliber gun. Darling testified that this did not concern him because Gordon always had a .45 caliber gun on him. Gordon told Darling to "give me everything you got." At

---

[1]Darling testified that he has been convicted of drug conspiracy and drug trafficking charges.

first, Darling thought Gordon was joking. Gordon then shot Darling in the foot and dragged him from the kitchen into a back bedroom. Gordon took $5,000 out of Darling's dresser drawer and approximately $2,300 out of Darling's pocket. Gordon threatened to kill Darling if he told anyone about the incident. Gordon then stole Darling's rental car, which the police located 0.7 miles from Darling's house.

{¶7} Darling then called Buckner to take him to the hospital. When speaking with police officers at the hospital, Darling told them that he was carjacked. The police investigated and found no evidence of a carjacking or a shooting. Darling testified that initially he lied to the police because he did not want to get Gordon in trouble and deal with the consequences of snitching on Gordon, who is a member of the "Loyal Always" gang.

{¶8} Darling testified that he changed his mind and decided to tell the police that Gordon shot him and took his money and the rental car. Darling made a statement, which was recorded, to Detective Glenn Daniels ("Detective Daniels") of the Bedford Heights Police Department. When Detective Daniels asked Darling where they could locate Gordon, Darling responded, "[h]e runs with the gang Loyal Always."

{¶9} Darling further testified that a video of his recorded statement to the police was posted on Instagram on or about May 21, 2015. The video was edited to make it appear as though he was telling the police information about the Loyal Always gang when he was not. Darling received numerous threats as a result of this video being posted on Instagram. Darling told the prosecutor and the Bedford Heights Police Department about

this video. After meeting with the prosecutor, Darling observed Gordon in his car in the parking lot. Gordon rolled down his window and yelled to Darling, "Mr. Officer, Mr. Officer." Darling interpreted Gordon's comments as being called a snitch. Darling also testified about photos and Facebook comments calling him a rat.

{¶10} Buckner testified that she, Darling, Gordon, and other friends went out on Friday, January 9, 2015, to celebrate Darling's birthday. Darling spent a large amount of cash that night. When they returned home, they noticed that the windows to Darling's car were broken. She further testified that Gordon spent the weekend with her and Darling. On Monday, January 12, 2015, around 5:00 p.m., she left Darling and Gordon to get Darling's car repaired. She left a rental car at their home. Approximately one-half hour later, she received a call from Darling telling her that she needed to take Darling to the hospital because Gordon shot him in the foot. When she got home, she observed blood smeared across the floor from the kitchen to the back bedroom. Buckner took Darling to the emergency room. She told the police the same version of events that Darling initially told the officers.

{¶11} Buckner also testified about the Instagram post of Darling's statement. She was afraid because they were snitching and snitches get killed. She testified that Gordon's friends were in the Loyal Always gang and she feared they would hurt them both as a result of the Instagram video.

{¶12} Detective Daniels testified that he was assigned to Darling's case. As part of his investigation, he presented Darling with a photo array, where Darling selected

Gordon as his assailant. The police also went to Darling's home where they discovered a shell casing that was consistent with that of a .45 caliber handgun. Detective Daniels took a video-recorded statement from Darling. Detective Daniels provided the prosecutor with a copy of Darling's statement. Gordon's retained defense counsel testified that on or about May 20, 2015, he showed Darling's recorded statement to Gordon during a private meeting between defense counsel and Gordon.

{¶13} On May 27, 2015, Detective Daniels received several phone calls from Darling stating that there is an edited version of his statement to the police that was posted on Instagram on May 22, 2015. The video appears to be a cell phone recording of Darling's statement. Darling indicated to Detective Daniels that he was afraid for his life and this Instagram video has ruined his life. Detective Daniels requested information from Facebook about the video, but he could not identify the source of the post. Detective Daniels testified about the Loyal Always gang. He acknowledged that he is not a gang expert, but has basic knowledge of the gang. He testified that the Loyal Always gang is an offshoot of the former LA Gunners gang. The LA Gunners were raided by the ATF in 2008 because of an investigation into various criminal activity, including murder, firearm violations, rape, assaults.

{¶14} At the conclusion of trial, the jury returned a verdict of guilty of all counts of the indictment, including the firearm specifications in Case No. CR-15-594287-A (two counts of aggravated robbery, two counts of felonious assault, and one count of

kidnapping). The jury found Gordon not guilty of the charge of intimidation in Case No. CR-15-596591-A.

{¶15} That same day, the court proceeded to sentencing. The court merged Counts 1 and 2 (aggravated robbery) and Counts 4 and 5 (felonious assault) for purposes of sentencing. The court then proceeded to sentence Gordon on Counts 1, 3, and 5. On each of Counts 1 and 3, the court sentenced Gordon to four years in prison on the underlying offenses, plus the one- and three-year firearm specifications. On Count 5, the court sentenced Gordon to three years in prison on the underlying offense, plus the one- and three-year firearm specifications. In accordance with R.C. 2929.14(B)(1)(g), the court ordered that the two most serious firearm specifications be served consecutive to each other and the underlying offenses in Counts 1, 3, and 5. The court further ordered that the underlying offenses in Counts 1, 3, and 5 be served concurrently to one another for an aggregate of ten years in prison.

{¶16} Gordon now appeals, raising the following five assignments of error for review, which shall be discussed together where appropriate.

Assignment of Error One

The trial court erred by allowing prejudicial joinder of the charge of intimidation to offenses under CR-15-594287.

Assignment of Error Two

The trial court erred by permitting witnesses to provide prejudicially irrelevant testimony which allowed the jury to base its verdict on matters other than evidence of the actual offense charged.

Assignment of Error Three

The trial court erred by failing to find the convicted offenses to be allied pursuant to R.C. 2941.25(B).

### Assignment of Error Four

The convictions are against the weight of the evidence.

### Assignment of Error Five

Defense counsel's failure to object to an improper joinder and to the admission of prejudicially irrelevant testimony deprived the defendant of his right to effective assistance of counsel.

### Joinder

{¶17} In the first assignment of error, Gordon contends that the trial court erred when it allowed the joinder of the intimidation charge to the offenses in his robbery case. Specifically, Gordon argues the joinder of these cases violated his ability to retain his own counsel under the Sixth Amendment. He additionally argues that the inclusion of gang-related testimony unfairly allowed the jury to consider matters other than whether Gordon shot Darling and base its convictions on otherwise excluded evidence. Because Gordon was acquitted in the intimidation case (CR-15-596591-A), our discussion focuses on the robbery case (CR-15-594287-A).

{¶18} We initially note that because Gordon failed to object to the joinder of the indictments, he has waived all but plain error. *State v. Saade*, 8th Dist. Cuyahoga Nos. 80705 and 80706, 2002-Ohio-5564, ¶ 12. Under Crim.R. 52(B), notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B),

it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

{¶19} Crim.R. 8 governs joinder of offenses and provides:

(A) Joinder of offenses.   Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶20} In addition, Crim.R. 13 provides in pertinent part:

The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information.

{¶21} Thus, under Crim.R. 8(A) and 13, two or more offenses can be tried together if the offenses are of the same character, based on connected transactions, or are part of a course of conduct. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶22} However, Crim.R. 14 requires separate trials if it appears that a criminal defendant would be prejudiced by such joinder.   The defendant bears the burden of demonstrating both prejudice and that the trial court abused its discretion in denying severance of the indictments.   *State v. Kirk*, 8th Dist. Cuyahoga Nos. 95260 and 95261, 2011-Ohio-1687, ¶ 31, citing *State v. Coley*, 93 Ohio St.3d 253, 2001-Ohio-1340, 754 N.E.2d 1129; *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166; *Saade,* 8th Dist. Cuyahoga Nos. 80705 and 80706, 2002-Ohio-5564.

{¶23} Based on the unique circumstances of this case, we find that Gordon was prejudiced as a result of the joinder.   We note that Gordon was not prejudiced by the

introduction of the gang-related testimony. Rather, Gordon was prejudiced and his constitutional right to counsel was violated when the trial court removed his originally retained defense counsel from his robbery case and ordered Gordon to proceed to trial with a different defense counsel.

{¶24} Gordon was charged in this case on March 26, 2015. Nearly three months later, on June 11, 2015, Gordon was charged in another case with the intimidation of a witness — Darling. Then on June 29, 2015, the state filed a motion to join these two cases and a motion to disqualify Gordon's originally retained defense counsel. The state argued that Gordon's defense counsel should be disqualified because he would be a material witness in the intimidation case. The trial court granted the state's joinder motion and disqualified defense counsel. After the trial court granted the joinder, Gordon's originally retained counsel was forced to be removed from the robbery case as he was a material witness to the intimidation case. Defense counsel, however, was not a material witness to the robbery case.

{¶25} While the law generally favors the joining of multiple offenses if the offenses are of similar character, in the instant case, we are presented with the unique circumstance in which the joinder of the indictment prevented the defendant from retaining counsel of choice. The separation of these two cases, which were indicted three months apart, would have allowed Gordon's originally retained counsel to represent Gordon on his robbery case. The Sixth Amendment, as made applicable to the states through the Fourteenth Amendment, guarantees the accused in a state criminal trial the

right to counsel. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct 2525, 45 L.Ed.2d 562 (1975); *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Once Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder. Therefore, we find that the trial court committed plain error by joining the two cases for trial.

{¶26} Accordingly, the first assignment of error is sustained.

{¶27} In the remaining assignments of error, Gordon challenges the admission of the gang-related evidence; allied offenses; the manifest weight of the evidence; and the effectiveness of his new counsel. However, our disposition of the first assignment of error renders these assigned error moot. App.R. 12(A)(1)(c).

{¶28} Judgment is reversed in Case No. CR-15-594287-A, and the matter is remanded for a retrial in this case.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., CONCURS;
TIM McCORMACK, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

TIM McCORMACK, J., DISSENTING:

**{¶29}** While the Sixth Amendment encompasses a defendant's right to be represented by one's counsel of choice, that right is not unqualified. *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998). A criminal defendant only has a presumptive right to be represented by his or her chosen counsel, *Keenan* at 137, and the right is circumscribed in several important respects. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In particular, the presumption may be overcome by a demonstration of actual or serious potential conflict. *Keenan* at 137, citing *Wheat* at 164.

{¶30} Here, a reading of the record indicates Gordon had retained two defense counsel, the first one shortly after he was indicted and the second one a day before the robbery victim reported the Instagram incident to the police. The state moved for joinder of trial and also moved to disqualify his first counsel because counsel was a material witness on the intimidation case. Gordon opposed the motion to disqualify counsel, arguing counsel was not a necessary witness in the intimidation case. He did not object to the joinder, nor did he object to the disqualification of counsel on Sixth Amendment grounds.

{¶31} The courts have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). *See also State v. Boone*, 108 Ohio App.3d 233, 238, 670 N.E.2d 527 (1st Dist.1995) (the right to counsel must be considered along with the need for the efficient and effective administration of criminal justice). Here, Gordon has not demonstrated, either at trial or on appeal, prejudice resulting from the disqualification of his first counsel. I would defer to the trial court's discretion in its balancing of the needs for efficient and effective administration of justice against fairness to the defendant in its decisions granting joinder and disqualifying counsel. For these reasons, I respectfully dissent from the majority's decision. The remaining assignments of error should be addressed.