MANSFIELD, Justice (dissenting).
I respectfully dissent. The asset freeze was improper. But it didn't prevent Robert Krogmann from hiring the counsel of his choice, paying his counsel's bills, and mounting a vigorous trial defense. There was no structural error, and no reason exists for Krogmann to receive a second trial.
On March 13, 2009, Krogmann arrived at his former girlfriend's home with a handgun. He used the gun to shoot her three times. The first bullet entered his ex-girlfriend's stomach, the second her arm, and the third her spine. Before initially shooting his victim, Krogmann told her, "[I]f he couldn't have me, no one was going to have me and ... we were both going to die together that day." After firing the first two shots, Krogmann dismissed his victim's pleas with the statement that "he wasn't going to go to jail for attempted murder." Krogmann then proceeded to fire the third shot that entered her spine.
Fortunately, Krogmann's former girlfriend survived her ordeal. Unsurprisingly, Krogmann was later convicted of attempted murder and willful injury causing serious injury.
I. No Prejudice.
Krogmann now hypothesizes that if it hadn't been for the asset freeze, he would have had a better outcome at trial. I think not. Notwithstanding the asset freeze, Krogmann was able to replace his original defense attorney with someone else he preferred, he was able to pay all of his counsel's bills (which totaled approximately $67,000), and he was able to retain an expert psychiatrist who testified at trial.
As Krogmann's defense counsel put it, except for a jury consultant, "[A]ny item I asked for, funds for attorney fees or this or that, experts, it seemed, from memory, to have been fully granted." Krogmann's defense counsel confirmed that he "never felt restricted or restrained from asking for funds for [Krogmann's] defense." He added that the asset freeze "did not seem to affect what [he] was doing for [Krogmann], but for [the jury consultant]."
Especially given the strength of the State's case against Krogmann, I do not *327 believe there was any prejudice here. See State v. Coleman , 907 N.W.2d 124, 141 (Iowa 2018) (noting that ineffective assistance requires proof of prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (quoting Ledezma v. State , 626 N.W.2d 134, 143 (Iowa 2001) )).
Krogmann maintains that without the asset freeze, he would have been able to hire the jury consultant, to consider hiring additional counsel, to post bond, to retain an additional mental health expert, and to make more phone calls "to family and additional lawyers."
Both the district court and the court of appeals examined these arguments and decided none of these things would have made a difference. I agree. As the court of appeals put it, "Without belaboring the facts, we conclude there is no reasonable probability of a different outcome...."
Consider, for example, the report of the additional psychiatrist retained by Krogmann for the postconviction-relief hearing. Krogmann's theory is that, but for the asset freeze, this expert could have testified as an additional expert at the time of trial. Yet all this expert could say was, "There is a possibility that at the time of the crime [Krogmann] may have had a brief psychotic episode as well as being severely depressed." (Emphasis added.) I fail to see how such equivocal testimony would have been of much help to Krogmann at trial.
Krogmann's arguments that he would have a better result if he had hired a jury consultant or if he had posted bail are even more speculative. Most individuals charged with attempted murder are incarcerated before trial and do not have the benefit of a consultant to assist with jury selection. Yet if Krogmann's logic is correct, these individuals are being denied constitutional rights because their trial defense is being impaired. Have we now made bail in Iowa a Sixth Amendment as well as an Eighth Amendment right?
II. No Structural Error.
Not wishing to push the prejudice point too far, the majority instead determines that the asset freeze was a structural error entitling the defendant to automatic reversal of his convictions. Here too, I have a different view.
At the outset, I pose a question: If the asset freeze was so egregious as to amount to a structural error, why did we not grant Krogmann's interlocutory appeal from the asset freeze on May 26, 2009? Our court was asked to step in and did not do so. An interlocutory appeal would have been the normal way to fix a structural error like this if it would have tainted the ensuing trial. Cf. Luis v. United States , 578 U.S. ----, ----, 136 S.Ct. 1083, 1087, 194 L.Ed.2d 256 (2016) (plurality opinion) (granting interlocutory appeal from asset freeze that prevented the defendant from hiring the counsel of her choice).
In fact, there was no structural error. The majority conflates (1) the right to select the retained counsel of one's choice with (2) a nebulous right to spend money however and whenever one chooses on one's defense. The United States Supreme Court has found denial of the former right to be a structural error. See id. at ----, 136 S.Ct. at 1089. But no court until today has found denial of the second right to be a structural error. The Sixth Amendment and article I, section 10 expressly provide for a right "to have the assistance of counsel." U.S. Const. amend. VI ; Iowa Const. art. I, § 10. Needless to say, they do not mention a right to the assistance of a jury consultant.
*328 Luis sets forth the outer limits of what amounts to a structural error in this area. In Luis , the United States Supreme Court held over the dissent of three justices that a freeze of untainted assets constituted a structural error when it affected a defendant's ability to obtain the counsel of her choice . 578 U.S. at ----, 136 S.Ct. at 1089. As Justice Breyer stated for the plurality, "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." Id. (alteration in original) (quoting Caplin & Drysdale, Chartered v. United States , 491 U.S. 617, 624, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989) ).
Thus, in Luis , the government and the defendant had stipulated that the asset freeze would prevent the defendant "from using her own untainted funds, i.e., funds not connected with the crime, to hire counsel to defend her in her criminal case." Id. at ----, 136 S.Ct. at 1088. The Court seized on this stipulation to conclude that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." Id. at ----, 136 S.Ct. at 1089.
This case is quite different. Unlike Luis, Krogmann was not in any way prevented from hiring-or paying-the counsel of his choice. At most, the record shows that the asset freeze prevented Krogmann from hiring a jury consultant, posting bond, and making as many calls from jail as he wanted to make.
The majority opinion cites no authority-not even a law review article-for the proposition that what occurred here amounts to a structural error.
The best the majority can muster is the same case Krogmann cited to us: United States v. Stein , 435 F.Supp.2d 330 (S.D.N.Y. 2006), aff'd , 541 F.3d 130 (2d Cir. 2008). The majority terms Stein an "important" case. Stein involved the Thompson Memorandum, a United States Department of Justice policy which sought to deter corporations from advancing legal fees to their criminally charged employees by providing that such fee payments would be taken into account in determining whether the corporation should be charged. Id. at 337-38. As a result of the Thompson Memorandum, a company cut off payment of its employees' legal fees when they were indicted. Id. at 344-45. The district court found a Sixth Amendment structural error, noting that the government's action had effectively removed the defendants' counsel of their choice and forced them to rely on appointed counsel. Id . at 369.
Notably, on appeal, the United States Court of Appeals for the Second Circuit later held that any structural error was limited to those defendants who were actually deprived of their "right to counsel of choice." Stein , 541 F.3d at 157. The remaining defendants had to show, and did show, "interference in their relationships with counsel and impairment of their ability to mount a defense." Id. That is exactly what Krogmann has not shown.[14]
The line drawn by the Second Circuit is consistent with Supreme Court precedent. In Caplin & Drysdale , the Supreme Court indicated that "[w]hatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of ... counsel.' " 491 U.S. at 626, 109 S.Ct. at 2652 (omission in original) (quoting *329 Walters v. Nat'l Ass'n of Radiation Survivors , 473 U.S. 305, 370, 105 S.Ct. 3180, 3215, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting)).
Furthermore, the Second Circuit in Stein expressly declined to address the following situation:
The defendant proceeds to trial with his or her chosen attorney, and the attorney is forced to limit the scope of his or her efforts due to the defendant's financial constraints. The defendant is convicted based on overwhelming evidence of his or her guilt.
Stein , 541 F.3d at 158 n.15. The present case doesn't even reach that level. Although there was powerful evidence of guilt, Krogmann's attorney admitted that, except for the jury consultant, the asset freeze did "not seem to affect what [he] was doing."
And even at that, "Stein tested the outer limits of the Sixth Amendment's protection." United States v. Fattah , 858 F.3d 801, 809 (3d Cir. 2017) ; see also United States v. Fisher , 273 F.Supp.3d 354, 363 n.6 (W.D.N.Y. 2017) ("Fisher argues that the alleged Sixth Amendment violation in this case is structural error. But Fisher does not show why a claim for interference with counsel-rather than denial of counsel-should be subject to the harsh remedy of structural error." (Citation omitted.)).
The majority quotes United States v. Rosen , 487 F.Supp.2d 721, 727 n.8 (E.D. Va. 2007), for the proposition that "the right to expend one's resources in one's own defense" is "a Sixth Amendment right independent of the right to counsel of choice and to effective counsel." Yet the majority omits the point that really matters about Rosen : The court found that the right was not subject to a structural error analysis. Id. at 735-36. Accordingly, notwithstanding undisputed government interference with fee advances, the district court denied the defendants' Sixth Amendment claim in Rosen "for lack of a showing of prejudice." Id. at 736.
In effect, the majority conjures a new fundamental, structural right to be free from impediments on spending money that neither the Federal nor the Iowa Constitution recognize. The cases cited by the majority for this supposed "right" involve only the designation of who would represent the defendant-i.e., either a chosen counsel or the defendant himself or herself, see United States v. Gonzalez-Lopez , 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (right to counsel of choice); McKaskle v. Wiggins , 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (right to self-representation); Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (right to self-representation), or a refusal to honor the defendant's objectives. See McCoy v. Louisiana , --- U.S. ----, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018). Neither of those matters is at issue here.[15]
*330 The majority disregards our own precedent on structural error. In Lado v. State , we discussed the concept at some length. 804 N.W.2d 248, 252 (Iowa 2011). We said that "our case law provides few applications of structural error." Id. n.1. Structural error occurs only when "the criminal adversary process itself is 'presumptively unreliable.' " Id. at 252 (quoting United States v. Cronic , 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) ). Structural error exists where the error "affect[s] the framework within which the trial proceeds." Id. (quoting Arizona v. Fulminante , 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) ).
We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.
Id.
None of these scenarios arose here. In fact, as the court of appeals pointed out, "[t]he record reveals that Krogmann hired not one but three attorneys of his own choosing-one in the pretrial phase, a second in the pretrial and trial phases, and a third for his direct appeal." See also State v. Mulatillo , 907 N.W.2d 511, 518 (Iowa 2018) ("The defendant is deprived of his or her right to counsel when the court erroneously prevents the defendant from being represented by his or her counsel of choice, and no further inquiry into ineffectiveness of counsel or prejudice is required to establish a violation of the defendant's right to counsel.").
I would affirm the decisions of the district court and the court of appeals denying Krogmann's application for postconviction relief.[16]
Waterman, J., joins this dissent.

The majority labels the district court opinion Stein I and the court of appeals opinion Stein II . But the controlling opinion is that of the court of appeals-i.e., "Stein II ."

The majority's discussion of the United States Supreme Court's recent decision in McCoy shows how far afield the majority is reaching for precedent. McCoy held that it was structural error for trial counsel to admit a client's guilt over the client's objection. Id . at ----, 138 S. Ct. at 1512. The Court noted that the Sixth Amendment provides a right to the "assistance" of counsel. Id . at ----, 138 S. Ct. at 1508. This means the client reserves the ultimate right to determine certain defense objectives, including whether or not to maintain innocence of the charged criminal acts. Id . at ----, 138 S. Ct. at 1508-09.
Nothing like that right is involved here. The majority seizes on the Supreme Court's use of the word "autonomy" and argues that this case also involves "autonomy" rights. But that is only true at a very high level of generality, at a level where almost any constitutional error deprives the defendant of "autonomy." (Indeed, most of the Bill of Rights has to do with autonomy.) For example, if the defendant is wrongfully denied the opportunity to call a defense witness, or cross-examine a witness for the State, to some extent the defendant is no longer "master of the defense." Yet we would not say those errors are structural.

I agree with the majority's resolution of the consecutive-sentences issue.