COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Russell and Senior Judge Haley
Argued by videoconference


STEFAN M. GAYE, S/K/A
  DONOVAN RAE
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0713-20-4                  JUDGE WESLEY G. RUSSELL, JR.
                                                       NOVEMBER 3, 2021
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                            Louise M. DiMatteo, Judge[1]

            Elsa Ohman, Assistant Public Defender, for appellant.

            Leah A. Darron, Senior Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        On June 7, 2001, a jury convicted Stefan M. Gaye of distribution of cocaine in violation of

Code § 18.2-248.  Tried *in absentia*, Gaye was not sentenced at that time because he absconded for

seventeen years.  Eventually, after his arrest in another state, he was returned to the jurisdiction of

the trial court, where he was sentenced in 2018 for the 2001 conviction.  On appeal, Gaye argues

that the trial court erred in refusing to continue his 2001 trial because doing so "deprived him of his

Sixth Amendment right to counsel of his choice" and because there was no prejudice to the

Commonwealth.  Gaye further claims that the trial court violated his constitutional rights,

"including his right to confront witnesses under the Sixth Amendment, by concluding that he

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge DiMatteo conducted the 2018 sentencing proceeding that was memorialized in
the October 2018 sentencing order.  The Honorable Joanne F. Alper, who since has retired,
presided over the June 7, 2001 trial.  The Honorable Paul F. Sheridan, also now retired, presided
over the June 6, 2001 hearing on Gaye's motion for a continuance.

waived his right to be present at trial, where the record did not support the finding that his absence was voluntary, and his presence was material to his defense." For the reasons stated below, we affirm the judgment of the trial court.

BACKGROUND[2]

Because the Commonwealth was the prevailing party below, we "view the record in the light most favorable to the Commonwealth[,]" granting it any reasonable inferences that flow from that view. Delp v. Commonwealth, 72 Va. App. 227, 230 (2020).

In 1996, Gaye distributed cocaine in Arlington, Virginia.[3] Based on this conduct, he was charged with felony offenses. His preliminary hearing was scheduled for November 15, 1996. Gaye failed to appear at the preliminary hearing. Ultimately, in 2000, he was arrested in New Jersey and extradited to Virginia to face the charges.

Gaye having been returned to Virginia, the grand jury, on March 19, 2001, returned a true bill charging that on October 10, 1996, Gaye sold, gave, or distributed cocaine. Gaye's trial was set for June 7, 2001. Prior to trial, Gaye signed a document entitled "Appearance At Trial," which is dated March 22, 2001 and provides as follows:

> I understand that I must appear in Circuit Court at 9:30 a.m. on the date set for my trial . . . which is 6-7-01. I understand that if I fail to appear on the date set for trial, I may be tried in my absence and may be indicted for the felony offense of Failure to Appear which carries a sentence of up to five years in the penitentiary.

On June 5, 2001, less than forty-eight hours before trial was scheduled to commence, Gaye, through his retained counsel, filed a motion to continue the trial. In the motion, Gaye

---

[2] The record contains no transcripts for the pretrial motions heard on June 6 and 7, 2001. On July 16, 2020, Gaye timely filed a statement of facts in the trial court. The parties engaged in discussions over the content of the statement of facts, eventually proposing multiple statements of fact to the trial court. The parties ultimately submitted an agreed statement of facts that was accepted and signed by the trial court on December 3, 2020.

[3] Gaye's arguments on appeal do not challenge the factual bases for his conviction.

- 2 -

asserted multiple grounds for the continuance, averring that: he had "retained out of state counsel" as well as his local counsel, he needed additional time to collect documents to support his alibi defense, and he had not received in discovery all of the materials he was due.

The next day, June 6, 2001, Gaye and his retained local counsel appeared before Judge Sheridan for a hearing on his motion for a continuance. Judge Sheridan denied the motion and ordered that the trial would commence the next day as scheduled. The record we have been provided contains no specific objections that Gaye may have made in response to the trial court's denial of the motion.[4]

On June 7, 2001, local counsel appeared for trial, but Gaye did not. When the trial court called the case, counsel informed the trial court that his client had not yet arrived. The trial court passed the case and proceeded with other matters on its docket. When the trial court recalled the case, Gaye was still absent.

Counsel then moved the trial court for a continuance and asked that the trial court not try Gaye in his absence. Counsel explained that he checked with his office during the interim and discovered that Gaye had left him a voicemail message stating that he had "kidney problems" and was "very dizzy" that morning. Counsel also stated that Gaye's message included a request for counsel to "follow up on a plea bargain agreement" with the Commonwealth that had been discussed and agreed upon on June 6, 2001. Counsel acknowledged that in Cruz v. Commonwealth, 24 Va. App. 454 (1997) (*en banc*), this Court had approved the practice of

---

[4] Although the record contains no transcription or other recording of the June 6 proceeding, the statement of facts reflecting the June 7 motion and trial includes references to the proceedings before Judge Sheridan the previous day. As these references are the only record we have been provided regarding the June 6 proceeding, we accept them along with any filings and orders from the June 6 proceeding as establishing what occurred that day. To the extent there are any discrepancies or ambiguities in the parties' filings and the statement of facts agreed to by the parties, we resolve them in the favor of the Commonwealth because it prevailed below. See Delp, 72 Va. App. at 230.

proceeding to trial in the absence of the defendant, but he argued that the facts of that case differed substantially from those presented here. Counsel suggested that, rather than proceed to trial, the trial court issue a bench warrant for Gaye's arrest, which would afford Gaye the opportunity to be brought to court and explain under oath the reason for his absence.

The Commonwealth responded that the trial court should go forward with the trial that day, noting that the alleged offense occurred on October 10, 1996. The Commonwealth observed that the delay in trial to this point was due to Gaye's failure to appear for his preliminary hearing in 1996 and that he was only before the court now because of his 2000 arrest in New Jersey and subsequent extradition to Virginia. The Commonwealth also advised the trial court that, at the previous day's hearing on Gaye's motion for a continuance, Gaye "said he was going to be hiring a lawyer from California," not that he already had hired one. The Commonwealth relayed that not only had Judge Sheridan denied the continuance, but also had told Gaye in no uncertain terms "that if he failed to appear [on June 7], he would be tried in his absence." In addition, the Commonwealth noted that its witnesses, including a Virginia state trooper who had traveled three and a half hours to be present, were present and ready to go forward.

In response to questions from the trial court, Gaye's counsel agreed with the trial court that Judge Sheridan told Gaye in "fairly strong terms" that the trial would proceed on June 7, 2001, whether Gaye appeared or not. The trial court explained that, from Gaye's message, there is no suggestion that Gaye was in the hospital, "and the fact that he was discussing a plea bargain in that same message[,]" despite no indication that a plea agreement existed, indicated to the trial court that this was nothing more than Gaye attempting to grant himself the continuance that Judge Sheridan had denied. After noting that "it is difficult to justify the trying of a defendant in his absence," the trial court determined that, based on all of the facts and circumstances, it was

- 4 -

appropriate to proceed with trial. In doing so, the trial court noted that Gaye had known since his arraignment that the trial would take place on June 7 and that it could occur in his absence. The trial court also highlighted that Judge Sheridan had told Gaye the previous day that he would be tried in his absence if he did not appear and that, even taking the message received by counsel at face value, Gaye did not represent that he was hospitalized or otherwise physically unable to appear but just that he had a "kidney problem, whatever that means[.]"

Counsel objected to the trial court's ruling, specifically stating that Gaye would lose his right to confront witnesses and to be present to provide a defense.

Although the case had been scheduled as a jury trial, Gaye's counsel informed the trial court that Gaye wished to waive trial by jury. Because there was no written waiver of jury in the trial court's file or any other voluntary waiver of a jury by Gaye in the record, the Commonwealth insisted upon the jury, stating that it did so to avoid "creating an . . . issue for appeal later."

At trial, three police officers and an evidence technician testified for the Commonwealth. The jury returned a verdict of guilty. The following day the jury recommended a sentence of five years' imprisonment and a $5,000 fine. The trial court did not impose a sentence at that time, concluding that, although a defendant may be tried in his absence, he must be present for sentencing. Instead, the trial court issued a bench warrant for Gaye's failure to appear.

Years later, Gaye was arrested in New York and was extradited to Virginia on April 24, 2018. On September 14, 2018, the trial court held a sentencing hearing with Gaye present and imposed the jury's recommended sentence of five years and fined him $5,000. The trial court then suspended two years and six months of the sentence subject to a term of probation. The trial court entered the final order in the matter on October 22, 2018.

Gaye now appeals.[5] He asserts that the trial court erred in refusing to grant him a continuance; he claims that he was deprived of his right to assistance of counsel of his choice and that the trial court incorrectly found that a continuance would prejudice the Commonwealth. Gaye also asserts the trial court erred in trying him in his absence.

## ANALYSIS

### I. Denial of continuance

#### A. Standard of review

In general, we review a trial court's decision to deny a motion for a continuance for an abuse of discretion. Bailey v. Commonwealth, 73 Va. App. 250, 259 (2021). When, however, an appellant asserts that the denial of a continuance effectively deprives him of a constitutional right, such as his Sixth Amendment right to counsel or the right to be present at trial, we review the constitutional component of the argument *de novo*. Huguely v. Commonwealth, 63 Va. App. 92, 106-07 (2014).

Here, Gaye challenges the trial court's denial of his requests for a continuance on two distinct grounds.[6] First, he asserts that the trial court's decision effectively deprived him of his Sixth Amendment right to the assistance of counsel of his choice. He also asserts that "[t]he trial court erred in determining that a continuance would prejudice the Commonwealth," and thus, violated his right to be present at trial. As both arguments are premised on an alleged denial of a constitutional right, we review them *de novo*.

---

[5] On May 13, 2020, this Court granted Gaye's motion for delayed appeal.

[6] Gaye's arguments regarding the trial court's refusing to grant him a continuance stem from two separate motions to continue that were denied. The first was Judge Sheridan's denial of his motion to continue that was heard on June 6, 2001, the day before trial. The second was made the morning of trial when Gaye failed to appear and his counsel requested that the matter be continued.

B.  Counsel of choice

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  This right not only requires the government to provide counsel to indigent defendants facing potential incarceration, see generally Gideon v. Wainwright, 372 U.S. 335 (1963), but also guarantees "the right of a defendant who does not require appointed counsel to choose who will represent him."  United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006).

The right to counsel of one's own choosing, however, is not absolute; rather, it "is circumscribed in several important respects."  Wheat v. United States, 486 U.S. 153, 159 (1988).  Recognized limitations include the need for counsel of choice to be a member of the relevant bar, agree to represent the defendant, and be able to represent the defendant absent a disqualifying conflict of interest.  Id.

One such limitation on the right is tied to counsel of choice's availability to try the case in a timely manner.  We have noted on multiple occasions that the right to counsel of choice is "a qualified right which is limited 'by a countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis[.]'"  London v. Commonwealth, 49 Va. App. 230, 236 (2006) (ellipsis in original) (quoting Bolden v. Commonwealth, 11 Va. App. 187, 190 (1990)).  When counsel of choice's availability precludes representing a defendant in the ordinary course and in accord with the existing schedule "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."  Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).

Gaye, who was represented throughout the 2001 proceedings by Virginia counsel whom he had selected and retained, contends that the trial court impermissibly deprived him of his right

to be defended by counsel of his choice when it denied his request for a continuance, which he made less than forty-eight hours before trial. We disagree for several reasons.

First, the record does not establish that the trial court's denial of the continuance on the day before the June 7, 2001 trial deprived Gaye the services of his purported counsel of choice. Although the motion filed on June 5, 2001 states that Gaye "ha[d] retained out of state counsel" to work with "local counsel[,]" other parts of the record provide the contrary. Specifically, as recorded in the statement of facts, it was stated without contradiction at the June 7, 2001 hearing before Judge Alper that, at the June 6 continuance hearing before Judge Sheridan, Gaye sought the continuance, in part, because "he said he was going to be hiring a lawyer from California named Milton Grimes." That is, at the time of the hearing, Gaye had yet to hire another attorney to represent him.

Because we are required to view the record in the light most favorable to the Commonwealth, Delp, 72 Va. App. at 230, we must resolve the contradiction in favor of the Commonwealth and conclude that, at the time he sought the continuance, Gaye had yet to hire the out-of-state attorney referenced in his motion to continue. This conclusion is buttressed by the fact that neither Grimes nor any other out-of-state-attorney ever even attempted to appear on Gaye's behalf. No notice of appearance was filed with the June 5th motion, no such notice was provided to Judge Sheridan at the June 6 hearing, no such notice was filed on the morning of trial before Judge Alper, and no such notice has been filed in the more than twenty years the litigation has been ongoing up to and including this appeal. Thus, the decision to deny the motion did not deny him the opportunity to be represented by Grimes, but, at most, the opportunity to attempt to hire Grimes to represent him.

Even if the record were read as supporting a conclusion that Grimes had agreed to represent Gaye, the record does not establish that Gaye impermissibly was deprived of his

- 8 -

counsel of choice when the trial court denied his motion for a continuance. Grimes is referred to as "out of state counsel" and "a lawyer from California[;]" rendering reasonable the conclusion that Grimes was not a member of the Virginia State Bar. As the United States Supreme Court has made clear, a deprivation of choice of counsel claim requires that the counsel of choice be authorized to practice before the tribunal. Wheat, 468 U.S. at 159 (recognizing that "an advocate who is not a member of the bar may not represent clients (other than himself) in court"). As there is no indication in the record that Grimes was authorized to appear before the trial court, Gaye was not impermissibly denied his counsel of choice.[7]

Furthermore, even if the record established that Grimes agreed to represent Gaye and that Grimes was authorized to appear before the trial court, Gaye's claim still fails. As noted above, a defendant's right to counsel of choice is "a qualified right which is limited by a countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis[.]" London, 49 Va. App. at 236 (ellipsis in original) (quoting Bolden, 11 Va. App. at 190). Accordingly, when, as here, a defendant's invocation of his right to counsel of his choice necessarily would require delaying a scheduled trial, a trial court may deny the motion to substitute counsel of choice so long as the denial does not represent "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" Morris, 461 U.S. at 11-12 (quoting Ungar, 376 U.S. at 589).

Nothing about the process leading to the June 7, 2001 trial can be characterized as an insistence on expeditiousness, let alone an arbitrary or unreasoning one. Any expeditiousness analysis begins with the fact that the offense occurred in 1996 and trial was not scheduled to

---

[7] We recognize that a deprivation of choice of counsel claim can succeed when a trial court *erroneously* denies out-of-state counsel permission to appear *pro hac vice*. See Gonzalez-Lopez, 548 U.S. at 144. No action of the trial court here erroneously denied Grimes the ability to appear *pro hac vice* because no *pro hac vice* motion was ever filed for the trial court to consider.

begin until June 2001, almost five years later. Although there may be cases where a similar initial delay is not the fault of the defendant, that is not the case here. Gaye's misconduct—failing to appear at the 1996 preliminary hearing and absconding for years—was the sole cause of the nearly five-year delay.

That Gaye's misconduct already had caused a nearly five-year delay was a fact that permissibly informed the trial court's consideration of his request for a continuance. Given this history and the fact that among the reasons offered for seeking a continuance of unspecified duration were a lack of preparation[8] and a desire to hire, at some point in the future, an out-of-state counsel, the trial court rationally and reasonably concluded that the request was a delaying tactic. Accordingly, Judge Sheridan's denial of the requested continuance the day before the scheduled trial did not represent "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" Id.

Similarly, Judge Alper's denial of the request to continue the trial on the morning of trial cannot be characterized fairly as unreasoning or arbitrary. In addition to the factors and history that led Judge Sheridan to deny the request the day before, Judge Alper carefully considered the proffered medical excuse and detailed her reasons for finding it wanting in explaining her decision. As such, her denial of the request was reasoned and fully supported by the facts and circumstances; it was not "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[,]'" id., and therefore, did not constitute an impermissible denial of Gaye's right to counsel of his choice.

---

[8] After the indictment was returned in March 2001, Gaye and his retained counsel had ample time to prepare for the June trial. Despite having sufficient time to prepare, Gaye instead waited until the eve of trial to inform the trial court that he was not prepared to go forward because he, despite being on bond, had failed to collect documents he contended were critical to his defense.

C. Prejudice to the Commonwealth

Gaye next contends that Judge Alper erred in concluding that granting a continuance would prejudice the Commonwealth, and thus, erred in denying the continuance request made on the day of trial. Relying on our decision in Cruz v. Commonwealth, 24 Va. App. 454 (1997) (*en banc*), he specifically argues that we have held that a potential loss of witnesses in the future is insufficient prejudice to the Commonwealth to deny a continuance request necessitated by a defendant's absence on the first day of trial.

As Gaye notes, Cruz involved a trial court's denial of a continuance requested on behalf of a defendant who was absent on the first day of trial. Id. at 459. In detailing what would be necessary to deny a defendant a continuance in such a scenario, we stated that the trial court "must . . . determine whether a continuance would be 'prejudicial to the Commonwealth's case.'" Id. at 461 (quoting Hunter v. Commonwealth, 13 Va. App. 187, 191 (1991)). Furthermore, we noted that "[w]e do not believe the Commonwealth can establish prejudice only by showing that witnesses may be lost or not available for a second trial." Id. at 464. Gaye's argument presumes that such a potential problem with witnesses is the only potential basis for the trial court's finding of prejudice. His argument overreads the pertinent statement from Cruz, removes the context surrounding it, and ignores the totality of the record in this case.

Properly understood, our statement in Cruz holds that prejudice is not established by the always present theoretical possibility that witnesses may be absent at some future date.[9] To hold otherwise would render the prejudice requirement meaningless because, in the abstract, there is

---

[9] We recognized, however, that knowledge that a witness *would* be absent in the future, as opposed to the mere possibility of same, may be sufficient to establish sufficient prejudice. Cruz, 24 Va. App. at 465 ("In some cases, the Commonwealth's claim of prejudice may be stark and dramatically evident as when a crucial witness would be unavailable, for whatever reason, in the future. In such an instance, the ability of the Commonwealth to prove its case would be clearly prejudiced.").

always the possibility that a witness who is present today may be absent tomorrow due to unknown future circumstances ranging from illness and death to car trouble. Thus, sufficient prejudice will not be presumed "*only* [by the fact] that witnesses *may* be lost or not available for a second trial." Id. (emphasis added).

Our recognition that "only" such a showing is insufficient does not mean that a trial court cannot or should not consider the possibility that witnesses will be absent at a future trial; rather, it means that such a possibility must combine with other factors in the record to establish the necessary prejudice. Such factors are present here.

Gaye's failure to appear on the first day of trial was not his first unexcused absence from the proceedings. He failed to appear at his preliminary hearing *in this very case* and absconded for nearly five years. Not only does the five-year delay that was caused solely by Gaye's intentional misconduct increase the chance of the loss of witnesses for a future trial from that associated with an ordinary case, it reasonably raises the specter that Gaye never intended to appear for trial voluntarily. As we expressly noted in our discussion of potential prejudice to the Commonwealth in Cruz, we "recognize that a crucial factor to be considered is the likelihood that the accused would appear and the trial could take place at a later date." Id. at 465.

In denying the motion, Judge Alper expressly relied on this history and the uncertainty it necessarily engendered. She stated that she might have been "inclined" to grant the continuance but for the fact that the underlying criminal "transaction . . . occurred in 1996, five years ago" and that the delay was the result of Gaye having "already absented himself previously."

Further supporting concern over whether Gaye ever would appear for trial voluntarily was the fact that he had appeared in person in the trial court less than twenty-four hours earlier. Given that he was present then, knew that trial was scheduled for the next day, knew that he

- 12 -

would be tried in his absence if he did not appear, and still chose not to appear for trial certainly supports a reasonable inference that he would not appear voluntarily in the future.[10]

Finally, in Cruz we further limited the scope of our holding regarding prejudice to the Commonwealth by expressly rejecting "the argument that the economic cost to the court or the disruption of its docket is never sufficient to justify" denying a continuance request made on behalf of an absent defendant. Id. at 466. We noted that so long as the trial court considered not only the problems for witnesses caused by the defendant's absence, but also the "economic prejudice [caused by the delay] along with other factors, such as the absence of any evidence showing a reasonable likelihood that the trial could soon take place with the defendant's presence[,]" id. at 466-67, it was permissible for it to find sufficient prejudice to justify denying a continuance and proceeding with trial.

Here, considering all of the circumstances, including significant inconvenience to the witnesses (one of whom lived several hours away), disruption of the trial court's docket, the already lengthy passage of time between the offense and the trial, and the lack of any reason to believe Gaye would ever appear voluntarily, the record more than sufficiently establishes

---

[10] In finding that the trial court reasonably could conclude that there was no reason to believe that Gaye would ever appear at trial voluntarily, we limit our consideration to the information available to Judge Alper on the morning of June 7, 2001. Although later events confirmed that concerns over Gaye ever appearing for trial voluntarily were warranted, the fact that he ultimately absconded for an additional seventeen years was not known when the trial court denied the request for a continuance. Only the information available at the time could have been considered by the trial court, and thus, our review of this question is limited to the state of information as of the date of the decision.

prejudice to the Commonwealth if the continuance had been granted. Accordingly, the trial court did not err in denying the motion for a continuance made on the morning of trial.[11]

## II. Trial *in absentia*

In addition to securing a non-indigent defendant's right to counsel of his choice, the Sixth Amendment to the United States Constitution also protects the right of the accused to be present at trial. See Illinois v. Allen, 397 U.S. 337, 338 (1970). Gaye contends that the trial court violated his constitutional rights, "including his right to confront witnesses under the Sixth Amendment, by concluding that he waived his right to be present at trial, where the record did not support the finding that his absence was voluntary, and his presence was material to his defense."[12] We review this constitutional claim *de novo*. Huguely, 63 Va. App. at 106-07.

Although the Sixth Amendment grants the accused a right to be present during his trial, "[a] defendant can forfeit his right to be present if he voluntarily absents himself from trial." Nunez v. Commonwealth, 66 Va. App. 152, 156 (2016). "However, as one of the most basic rights guaranteed by the" Sixth Amendment, "an accused's right to be present at trial must be carefully safeguarded." Cruz, 24 Va. App. at 461. As a result, in addition to finding that the Commonwealth would be prejudiced by a continuance as discussed above, a trial court, "before proceeding *in absentia*, . . . must . . . determine that the absence of the accused denotes a waiver of the right to be present at trial." Id.

---

[11] The prejudice analysis set out in Cruz applies only in situations where the continuance is requested because the defendant is not present for the beginning of trial. A trial court need not find prejudice to the Commonwealth to deny a continuance request in circumstances in which the defendant is present. See generally Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007) (noting the general rule that we will reverse a trial court's denial of "a motion for a continuance . . . only upon a showing of abuse of discretion *and* resulting prejudice to the movant").

[12] We note that Code § 19.2-259 provides that "[a] person tried for felony shall be personally present during the trial." Because Gaye's assignment of error raises only a constitutional claim, any potential statutory claim is not before us in this appeal.

To constitute a waiver of the right to be present, a defendant's absence must result from "a voluntary, knowing, and intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences." Id. (quoting Hunter, 13 Va. App. at 191). Because there is a presumption against inferring a waiver of a constitutional right, Hunter 13 Va. App. at 191, we have adopted

> the rule that a knowing and voluntary waiver of the right to be present by a defendant who is voluntarily absent from the entire trial cannot be shown unless the defendant (1) has been given notice of his trial date; and (2) has been warned that his failure to appear could result in a trial in his absence.

Cruz, 24 Va. App. at 463. Such a showing is clear from this record.

There can be no dispute that Gaye had notice of the June 7, 2001 trial date. When arraigned, he executed the trial court's "Appearance At Trial" form. In the form, Gaye expressly warranted that he "underst[ood] that I must appear in Circuit Court at 9:30 a.m. on the date set for my trial . . . which is 6-7-01[,]" evidencing his knowledge of the June 7, 2001 trial date. Furthermore, Gaye was in court on June 6, 2001 when his motion to continue the June 7, 2001 trial was heard and denied, resulting in Judge Sheridan sternly reminding him that trial was scheduled for the next day and that Gaye needed to appear.

Similarly, there can be no dispute that Gaye knew that he might be tried in his absence if he failed to appear for trial on June 7, 2001. In the "Appearance At Trial" form he executed in March 2001, Gaye expressly acknowledged that if he "fail[ed] to appear on the date set for trial, I may be tried in my absence and may be indicted for the felony offense of Failure to Appear which carries a sentence of up to five years in the penitentiary." Furthermore, it is undisputed that when Gaye appeared in court on his motion for a continuance on June 6, 2001, Judge Sheridan told Gaye in "fairly strong terms" that the trial would proceed on June 7, 2001 whether

Gaye appeared or not. Thus, there is no question that Gaye had notice of the trial date and knew that he would be tried in his absence if he failed to appear.

Faced with this reality, Gaye essentially argues, as he did in the trial court, that his absence was not established as voluntary because he asserted through his message to counsel in 2001 that he was suffering from a "kidney problem." Although a medical condition that prevents a defendant from attending his trial would not constitute a "voluntary" absence, the record here more than amply supports Judge Alper's conclusion that a medical condition did not explain Gaye's absence on June 7, 2001, and that the proffered excuse was an attempt to grant himself the continuance that Judge Sheridan had denied the day before.

We note that, despite his initial claim of a medical problem, Gaye has not at any point in the intervening time offered any support for the claim. This is significant because he could not be sentenced in his absence, so the matter remained in the breast of the trial court through the sentencing proceeding in 2018. He therefore had the opportunity to demonstrate in 2018 that his absence in 2001 was medically justified. As we noted in Cruz,

> No prejudice would result to a defendant who was absent as a result of a medical or other unanticipated emergency, because his trial would not have been completed. Sentencing would have been stayed . . . until he appeared and was accorded the opportunity to justify his absence from the guilt stage of his trial. Upon hearing, if the [trial c]ourt was satisfied that the defendant's absence did not constitute a waiver, a new trial could be ordered.

24 Va. App. at 466. That Gaye did not make such an attempt here speaks volumes. Although we review Judge Alper's initial decision against the information available at the time, Gaye's failure to utilize the opportunity provided by our decision in Cruz to raise the issue at the sentencing hearing left the trial court with no reason to revisit the initial ruling. Because nothing in the record undermines the reasonableness of Judge Alper's initial decision, it was not error.

CONCLUSION

For the foregoing reasons, the trial court did not err in denying Gaye's requests for a continuance or in trying him in his absence.  Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>