

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1035-20

**VINCENT DEPAUL STREDIC, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**WALKER, J., filed a dissenting opinion.**

### DISSENTING OPINION

I agree with the Court that sending a written transcript of disputed testimony to the jury room in response to the jury's request, instead of having the court reporter read the testimony back to the jury as prescribed by article 36.28 of the Code of Criminal Procedure, was error. But I disagree with the Court's conclusion that the error was harmless and that the court of appeals erred in reversing. The error is a structural one that cannot be evaluated for harm and must be reversed. I believe the court of appeals did the right thing, and its judgment should be affirmed. I respectfully dissent.

### I — Structural Error

As the United States Supreme Court explained in *Weaver v. Massachusetts*, "'the general rule [is] that [even] a constitutional error does not automatically require reversal of a conviction.'" 137 S. Ct. 1899, 1907 (2017) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). "If the government can show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,' . . . then the error is deemed harmless and the defendant is not entitled to reversal." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). But some errors, known as structural errors, "should not be deemed harmless beyond a reasonable doubt." *Id.* Structural errors defy analysis by harmless error standards. *Id.* at 907–08; *see also Fulminante*, 499 U.S. at 309.

In *Weaver*, the Supreme Court identified "at least three broad rationales" for "[t]he precise reason why a particular error is not amenable to [harmless error] analysis—and thus the precise reason why the Court has deemed it structural[.]" 137 S. Ct. at 1908. First, an error can be deemed structural "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Id.*; *see, e.g.*, *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (right to self representation); *Weaver*, 137 S. Ct. at 1910 (right to public trial).

Second, an error can be deemed structural "if the effects of the error are simply too hard to measure." *Weaver*, 137 S. Ct. at 1908. "For example, when a defendant is denied the right to select his or her own attorney, the precise 'effect of the violation cannot be ascertained.'" *Id.* (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006)). Because it is "almost impossible to show that the error was 'harmless beyond a reasonable doubt,' . . . the efficiency costs of letting the government try to make the showing are unjustified." *Id.* (quoting *Chapman*, 386 U.S. at 24). Similarly, "a public-trial violation is structural for [that] reason: because of the 'difficulty of assessing the effect of the error.'" *Id.* at 1910 (quoting *Gonzalez-Lopez*, 548 U.S. at 149 n.4).

Third, an error can be deemed structural "if the error always results in fundamental unfairness." *Id.* at 1908; *see, e.g.*, *Gideon v. Wainwright*, 372 U.S. 335, 343–345 (1963) (right to an attorney); *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (right to a reasonable-doubt instruction).

These three categories "are not rigid. In a particular case, more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Weaver*, 137 S. Ct. at 1908. "For these purposes, however, one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.* The inability to assess harm can be the reason a structural error occurs. *Id.*

## II — Giving A Transcript Instead Of Reading It Is Structural Error

Although a violation of article 36.28's prescribed method of reading the testimony back to the jury is not a constitutional error, it should be considered a structural error because of the second rationale for categorizing errors as structural identified in *Weaver*. There is no way to evaluate the harm resulting from the violation.

When the jury informs the trial court that it has a disagreement about the trial testimony, under the process prescribed by article 36.28 in which the court reporter reads the testimony to the jury, we are well-assured that each and every juror hears an accurate rendition of the testimony. The court reporter's reading of the record to the jury occurs in open court in front of the parties and the trial judge. Accordingly, any mistake or impropriety in the reading will also occur in open court where the parties can object, the trial court can correct the problem, and there will be a record for appeal showing any differences between the court reporter's reading to the jury and the original trial testimony that the jury disagreed about. The court of appeals can then assess harm caused by any inaccuracies.

In contrast, when the response is to send a copy of the transcript into the jury room—while the transcript itself could be accurate—we have no assurances that each and every juror hears an accurate rendition of the testimony. Who received the transcript? Was the transcript shared between all of the jurors? Were only some of the jurors able to see the transcript for themselves? Or did the person who received the transcript first have exclusive control over it? If so, did that person read the transcript out loud, verbatim, to the rest of the jury? Or did he read it silently to himself, and then told the jury his understanding of the transcript? If so, how do we know if his understanding was accurate or if he even told the truth?

Even if twelve copies of the transcript go into the jury room, how can we be assured that all twelve jurors were given equal opportunity to read the material? Were the slower readers pressured to stop reading part of the way through? Or were they even given access to the copies? If not, did the person who received the twelve copies simply fail to hand them out to the rest of the jury? Or could he have deliberately withheld the copies and falsely told the other jurors that there was only one copy?

At the heart of the problem—and the reason we cannot assess harm—is the fact that we can never know the answers to these questions, and we certainly cannot correct any improprieties. With two exceptions, any evidence regarding what goes on in the jury room during deliberations is absolutely inadmissible. Texas Rule of Evidence 606(b) provides:

**(b)** **During an Inquiry into the Validity of a Verdict or Indictment.**

**(1)** **Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a

juror's affidavit or evidence of a juror's statement on these matters.

**(2)** **Exceptions.** A juror may testify:

**(A)** about whether an outside influence was improperly brought to bear on any juror; or

**(B)** to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b). A copy of the transcript is neither an outside influence nor does it relate to a juror's qualifications to serve. Therefore, we cannot know what happened with the transcript in the jury room or what effect—what harm—any improprieties might have had on the verdict.

The reading of the transcript occurs behind closed doors away from the view of the parties and the trial judge. If there is any mistake or impropriety in the reading, the parties cannot object, the trial court cannot correct the problem, and there will not be any record for appeal showing any differences between the reading of the transcript and the original that the jury disagreed about. The method the Court lets stand today has no assurances, and there is no way for an appellate court to accurately assess harm. The error is structural, even if it did not cause fundamental unfairness in Appellant's case. *See Weaver*, 137 S. Ct. at 1910.

## III — Conclusion

In sum, I agree with the Court that sending a copy of the transcript into the jury room was error. But I disagree with the Court's decision to assess the error for harm. What happened was structural error that is not subject to harm analysis and must be reversed. The court of appeals correctly reversed the error. Respectfully, I dissent.

Filed: May 11, 2022
Publish