[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11907

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KAREEM JAMAL YOUNG,
a.k.a. Kareem Al Jamal Young,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:17-cr-00522-LSC-HNJ-1

_____

Before JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant appeals the 188-month sentence he received after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In support of his appeal, Defendant argues the district court erred by denying his retained counsel's request at sentencing to withdraw from the case. Having carefully reviewed the record and the briefs submitted by the parties, we find no error, and thus **AFFIRM**.

## BACKGROUND

Defendant was indicted in November 2017 on one charge of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Based on the undisputed facts set out in his presentence investigation report ("PSR"), officers responding to a traffic accident in Tuscaloosa, Alabama in March 2017 encountered Defendant unconscious in the driver's seat of a vehicle that was resting against a utility pole. When awakened by the officers, Defendant appeared confused, had slurred speech, and needed assistance to exit the vehicle. He admitted he had been drinking and had taken a few Lortabs, and a search of his person uncovered a 9mm pistol in his waistband. Defendant was arrested for driving under the influence and violating Alabama's firearms law, and later determined to be a convicted felon at the time of his arrest.

Federal defender Allison Case entered an appearance on behalf of Defendant and represented him in an April 2018 detention hearing.  After the hearing, Defendant was released from custody on an unsecured bond with several conditions, including the condition that he refrain from using any illegal narcotic or controlled substance.  Shortly thereafter, Defendant tested positive for amphetamines, cocaine, and opiates in a urine sample he submitted pursuant to his conditions of release.

Defendant subsequently agreed to plead guilty to the § 922(g)(1) charge pursuant to a plea agreement.  Under this agreement, Defendant acknowledged that his offense carried an imprisonment term of up to 10 years that could be increased to an imprisonment term of "not less than 15 years and not more than life" should Defendant qualify for such a sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

On May 15, 2018, the district court held a change-of-plea hearing during which Defendant was represented by federal defender Case and at which Defendant entered a plea of guilty.  Defendant stated during the hearing that he was satisfied with Case and had no complaints about her representation.  He also confirmed that he was competent, that his plea was voluntary, and that he was not at that time suffering an impairment or under the influence of any drugs that could affect his ability to understand the proceeding, although he admitted he had used heroin and cocaine about a week prior.  The court advised Defendant of the potential sentencing ranges he faced, including the enhanced sentence that

would be applicable if Defendant qualified for sentencing under the ACCA. Given his admitted drug use while previously out on bond, the court ordered Defendant to self-report to the US Marshals Service while awaiting sentencing.

The court set Defendant's sentencing for September 2018. Prior to that date, the federal defender's office advised the district court that it had a potential conflict involving Defendant and asked for permission to withdraw from his case. The court granted the request to withdraw and reset Defendant's sentencing for December 2018. It then appointed Jason Neff, a member of the district's Criminal Justice Act ("CJA") panel, to represent Defendant.

Defendant subsequently moved *pro se* to withdraw his guilty plea. Contrary to the representations he made at the change-of-plea hearing, Defendant claimed he was coerced into pleading guilty by family members who threatened him and that his former attorney, Case, had induced him to enter the plea by promising him a reduced sentence. Defendant also argued in his motion that Case had provided ineffective assistance of counsel as to the plea, and that his new attorney Neff likewise had been ineffective by refusing to file various motions and objections proposed by Defendant. Based on the allegations in Defendant's motion, and per Neff's own motion, the district court permitted Neff to withdraw from the case, appointed CJA attorney Stuart Albea to represent Defendant, and reset Defendant's sentencing hearing for March 2019.

With the assistance of his newly appointed counsel, Defendant moved for a hearing on his *pro se* motion to withdraw his guilty

plea, and he also filed a motion to determine his competency both currently and at the time he entered the plea. Counsel stated in the competency motion that Defendant suffered from mental and emotional problems, and that he was not taking his medications but rather under the influence of illegal drugs while out on bond just prior to the change-of-plea hearing, such that he was unable to understand the nature of that proceeding and the consequence of entering a guilty plea. As part of the relief requested in the motion, counsel asked the court to order a psychological evaluation of Defendant. At the same time as counsel was pursuing the competency issue, Defendant filed various *pro se* motions critiquing his former attorneys and seeking discovery of documents to which he allegedly was denied access. Given the pending motions, the district court continued Defendant's March 2019 sentencing and referred the case to a magistrate judge.

The magistrate judge granted Defendant's motion for a competency evaluation and ordered that he be examined by Dr. Kimberly Ackerson, a forensic psychologist. Dr. Ackerson subsequently interviewed Defendant and recommended that he undergo a comprehensive psychiatric evaluation to assess his mental health issues. Defendant was then committed to the federal detention center at SeaTac, Washington for a more complete psychological evaluation.

Defendant was evaluated at SeaTac by forensic psychologist Cynthia Low. Dr. Low found no evidence to indicate Defendant suffered from a mental disorder that impaired his present ability to

understand the proceedings and charges against him and to assist in his defense, and likewise no evidence to suggest he was incompetent when he entered his guilty plea in May 2018. According to Dr. Low, Defendant's described mental health symptoms were explained by antisocial personality disorder, a non-specific substance-related disorder, and malingering. With respect to malingering, Dr. Low observed that Defendant displayed symptoms rarely experienced by those with genuine psychopathology, that his phone calls and emails outside the evaluation process contraindicated a mental health issue, and that he appeared to be deliberately distorting his symptoms to avoid criminal prosecution. Dr. Low reached the same conclusion in a separate report addressing Defendant's criminal responsibility for his charges, finding no evidence to indicate Defendant suffered from a mental disorder that rendered him unable to appreciate the nature, quality, or wrongfulness of his actions when he committed the alleged offense.

While awaiting the results of Dr. Low's evaluation, defense counsel Albea—Defendant's third attorney—filed a motion asking the district court to schedule a hearing to address his status as counsel in the case. Albea stated in his motion that Defendant had fired him and requested that he withdraw from the case. Albea stated that while he knew of no reason why he should withdraw from representing Defendant, it would be prudent for the court to address Defendant's concerns. Around the same time, Defendant filed a *pro se* motion to "recuse" Albea, citing ineffectiveness, ethics violations, dishonesty, and discrimination, among other things. Defendant advised the court in his *pro se* motion that he had filed a

bar complaint against Albea and that their relationship was "damaged beyond repair."

Once he received a copy of Dr. Low's report, Defendant filed another *pro se* motion, this time asking the court to make an "ethical assessment" and to order a second psychological evaluation. In his motion, Defendant broadly accused Dr. Low of racism, discrimination, ethics violations, and criminal activity. Defendant included as attachments to his motion complaints he claims to have filed with an oversight board in which he alleged that Dr. Low had told Defendant she supported white supremacy, had frequently discussed sex with him, had shown him pictures of her vagina stored on her cell phone, and had told Defendant she had sex with white inmates for money.

Defendant subsequently filed two additional *pro se* motions seeking the removal of Albea as his counsel. In the first motion, filed in January 2020, Defendant reiterated his claim that counsel was ineffective and that their relationship was "damaged beyond repair." In the second motion, filed in February 2020, Defendant claimed among other things that Albea and his prior lawyers had refused to seek records relevant to his defense.

The magistrate judge held a hearing in March 2020 to determine Defendant's competency and to rule on his pending motions. Dr. Low testified at the hearing, consistent with her written report, that Defendant had an average ability to understand the nature and consequences of his criminal proceeding and to assist counsel in his defense both currently and at the time he pled guilty in May 2018.

That is, Dr. Low testified that Defendant was competent. She explained that she reached this conclusion after interviewing Defendant for approximately 8 hours, administering numerous tests to him, reviewing his health records, monitoring his phone calls and emails with family members, and speaking with SeaTac staff and other individuals who had recently interacted with Defendant, such as his probation officer and his former attorney, Case. Based on the information she obtained from all those sources and numerous examples of Defendant's dishonesty during his evaluation, Dr. Low concluded Defendant was deliberately distorting mental health symptoms and that he was not suffering from a mental disorder either currently or at the time he pled guilty.[1]

Following the hearing, the magistrate judge issued a lengthy written order addressing Defendant's competency and denying his multiple competency-related *pro se* motions.[2] Based on Dr. Low's testimony, documentary evidence presented at the competency hearing, and other evidence in the record, the magistrate judge concluded in the order that Defendant was competent both currently and when he pled guilty. The judge noted in the order

---

[1] Dr. Low explained that while one test did not indicate malingering, she believed that test was an outlier because two other tests showed deliberate distortion by Defendant of his symptoms, as well as over-endorsing symptoms that could not be reconciled with SeaTac staff observations and Defendant's interactions with other individuals, including his mother and his former attorney.

[2] The magistrate judge issued a separate order denying Defendant's numerous discovery-related *pro se* motions.

Defendant's dishonesty, suspected malingering, and "history of relational problems with his attorneys" as well as his tendency to "lash out at his attorneys when the proceedings do not go his way."

Despite the magistrate judge's competency findings, the district court permitted Defendant to withdraw his guilty plea in July 2020 based on the Supreme Court's then recent decision in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) holding that § 922(g) requires the Government to prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"—in Defendant's case, convicted felons. As the court pointed out, Defendant's indictment did not allege that Defendant knew he was a convicted felon, prohibited from possessing a firearm under § 922(g), at the time of his offense. The grand jury subsequently issued a superseding indictment charging Defendant with being a felon in possession of a firearm in violation of § 922(g)(1) and alleging, in accordance with *Rehaif*, that Defendant knew he was a convicted felon when he possessed the firearm. Defendant pled not guilty to the superseding indictment, and his case was set for trial on August 31, 2020.

Two days after Defendant entered his not guilty plea, appointed counsel Albea moved to withdraw from the case and retained counsel Wilson Myers entered a notice of appearance as counsel for Defendant. The district court granted Albea's motion to withdraw. Further, the court specifically instructed Defendant that as he had been permitted to dismiss multiple attorneys—even

though these attorneys were competent—any additional motions to withdraw would have to be justified by a very good reason, given Defendant's history of demanding new attorneys. The court observed that Defendant appeared to be "playing a game with the system."

On August 28, 2020, three days before Defendant's scheduled trial, defense counsel advised the court in a pretrial hearing that Defendant wanted to plead not guilty by reason of insanity, and he concurrently moved for a second psychological evaluation. The court denied the motion, noting that: (1) Defendant had already been evaluated, (2) the first psychologist who evaluated Defendant concluded he was malingering, (3) the new motion was filed well after the deadline for pretrial motions, and (4) Defendant did not give proper notice of his intent to pursue an insanity defense. The court stated further that the motion was "clearly an effort . . . to delay [the] proceedings."

Defendant responded by seeking to change his plea to guilty. The court briefly recessed the hearing so Defendant could eat lunch and take time to consider his plea. When the hearing resumed, Defendant began arguing again about Dr. Low, claiming that her report was inaccurate and that she had falsified her evaluation. The court found Defendant's claims to be further support of the fact that he was "trying to play the system." When Defendant again attempted to plead not guilty by reason of insanity and accused the prosecutor and other officials of bias and prejudice, the court ended the hearing.

On September 1, 2020, the day after Defendant's trial was scheduled to begin, Defendant filed a notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure that he intended to rely on a defense of insanity at the time of his offense. The district court again continued Defendant's trial and referred the issues raised by Defendant's notice to the magistrate judge. The magistrate judge held a hearing on September 9, 2020, after which he granted Defendant's request for a second psychological evaluation and approved funding for the evaluation. While awaiting the second evaluation, attorney Myers asked the district court to release Defendant on bond, arguing he had been incarcerated too long and that the COVID pandemic could delay his trial. The court denied counsel's request, citing Defendant's use of illegal drugs while on bond, his extensive criminal history spanning 20 years—which the court found significant given that Defendant was only 37 years old—and his history of failing to appear and of running from law enforcement.[3] Trial was again reset, this time for April 19, 2021.

Defendant subsequently was reevaluated by Dr. Ackerson, who concluded he did not suffer from a mental disorder at the time he committed his offense. Specifically, Dr. Ackerson determined that Defendant was not at the time of the offense "suffering from a severe mental disease or defect that could have rendered him

---

[3] Defendant appealed the denial of bond to this Court, but the magistrate judge denied his motion for leave to appeal *in forma pauperis* and this Court dismissed the appeal for want of prosecution after Defendant failed to pay the required filing and docketing fees.

unable to discern between right or wrong and/or both understand and appreciate the nature and quality o[f] . . . his actions." Nevertheless, Defendant instructed his attorney Myers to pursue a mental disorder defense at trial and to subpoena various mental health witnesses and records to present to the district court.

On April 9, 2021, the Government asked the district court to hold a hearing to determine whether Defendant could present a *prima facie* case that he suffered from a mental disorder at the time of his offense. The Government noted in its motion that Defendant had advised the court that he intended to persist in his mental health defense even though he had not produced an expert who would validate his claim to suffer from a serious mental disorder. It cited authority for the proposition that evidence of a mental disorder short of insanity at the time of the offense is inadmissible during a trial involving a general intent crime such as possession of a firearm by a convicted felon. As such, the Government argued, Defendant should be required, prior to trial, to make a specific proffer of any testimony or evidence regarding his alleged mental disorder at the time of the offense.

The court granted the Government's motion, noting that Defendant had not identified any expert witness who could support a mental disorder defense and that he was required to disclose any such witnesses in advance of trial. The court then stated its concern that Defendant was once again attempting to delay the proceedings. Citing Dr. Ackerson's recent evaluation, the court pointed out that Defendant's second psychological evaluation, like

his first, indicated not only that he was free from any mental disorder but also that he was continuing to feign mental health symptoms to deflect responsibility for his crime. Nevertheless, the court set a hearing for April 15, 2021, to give Defendant an opportunity to bring in any mental health professionals who could support a mental disorder defense.

Defendant did not produce any mental health experts at the April 15 hearing. Defense counsel acknowledged during the hearing that he failed to subpoena any doctors who could testify in support of Defendant's mental health claim and that no such doctors were available to attend the hearing. The court noted that there was no evidence in the record to support Defendant's claim to have had a severe mental disorder at the time of the offense and that two psychological evaluations, including the recent evaluation conducted by Dr. Ackerson, indicated that Defendant did not suffer from a mental disorder that could have rendered him unable to discern between right or wrong and/or understand and appreciate the nature of his actions at the time of his offense. When Defendant protested that he had taken drugs around the time of his arrest attempting to commit suicide, the court pointed to a portion of Dr. Ackerson's report suggesting that was not true based on police body camera recordings and Defendant's own statements to medical personnel at the time. The court concluded the mental health discussion by advising Defendant that he needed evidence to present the mental health claim to a jury and that he was lacking such evidence.

When the court confirmed during the hearing that Defendant's trial would begin the following Monday, defense counsel indicated that Defendant wished to enter a "blind" guilty plea; that is, a plea of guilty without a plea agreement between Defendant and the Government.  The court then explained to Defendant that a plea would result in a waiver of his trial rights, to which Defendant responded that he thought he understood but his mind was "fuzzy."  The court informed Defendant that it did not want to take his plea unless it was made voluntarily, knowingly, and intentionally, and it recessed to give Defendant time to think about his decision.  Prior to recessing, the court advised Defendant about the sentencing possibilities for his offense, including the 15-year minimum sentence that could apply under the ACCA.  Finally, in response to Defendant's question whether he would be eligible for a downward departure based on his cooperation, the court made clear that there could be no departure based on substantial assistance absent a motion from the Government asking for such a departure.

Upon his return to court, Defendant again stated that he wanted to enter a blind guilty plea, at which time the court reviewed the rights he would be waiving by pleading guilty and confirmed he was not under the influence of drugs or alcohol, that his mental status had not changed since he was evaluated by Dr. Ackerson, and that he had no complaints about his counsel Myers.  The court also reviewed the elements of the offense Defendant was charged with committing and the evidence the Government would have to present to prevail at trial, and Defendant stated that he understood that information.  The court then again explained the

range of punishment for Defendant's offense with and without an ACCA enhancement, and Defendant advised the court that he understood the sentencing possibilities in his case and, more specifically, that he understood he could be subject to a 15-year mandatory minimum sentence pursuant to the ACCA. At this point in the colloquy, Defendant briefly backtracked, stating that he wanted to plead guilty without admitting he was guilty, whereupon the court observed that the case had involved "too much gamesmanship" and that it appeared Defendant was "playing games." The court advised Defendant that if he did not want to plead guilty, they should try the case, to which Defendant responded that he wanted to plead guilty because he was guilty, and that a plea was in his best interest. The court then accepted Defendant's plea and set his sentencing for May 25, 2021.

A PSR was prepared, which was materially the same as the PSR prepared after Defendant's first guilty plea. The PSR calculated Defendant's base offense level as 24 pursuant to USSG § 2K2.1(a)(2). As a result of a prior serious drug offense and two violent felonies (Alabama robberies), Defendant was determined to be an armed career criminal and thus subject to an enhanced sentence pursuant to under the ACCA, resulting in an adjusted offense level of 33. Two levels were deducted for Defendant's acceptance of responsibility, yielding a total offense level of 31. The PSR described Defendant's lengthy and extensive criminal history, beginning with a burglary at the age of 12. With a total offense level of 31 and a criminal history category of VI, the PSR calculated Defendant's recommended guidelines range to be 188 to 235 months

in prison, with a mandatory minimum of 180 months pursuant to the ACCA.

Defendant subsequently filed several *pro se* objections to the PSR and numerous motions addressing his upcoming sentencing. In these objections and motions, Defendant accused the probation officer who had conducted his PSR interview, a Pickens County jail officer, and a prosecutor, among other officials, of racism, bias, dishonesty, harassment, sexual misconduct, ethical violations, and various other crimes. Defendant also challenged his base offense level calculation and the use of his prior convictions as qualifying offenses under the ACCA.

In none of the above filings did Defendant seek to terminate Myers as counsel, to withdraw his guilty plea, or to postpone the sentencing hearing. Nevertheless, at the beginning of Defendant's sentencing hearing on May 25, 2021, Myers verbally sought to withdraw from the case and asked that the hearing be continued. When asked about the withdrawal, Defendant stated that he was not pleased with Myers, that he had not pleaded guilty to any penalties associated with his crime, and that he was not subject to the ACCA enhancement recommended in the PSR. Defendant asserted further that Myers had lied to him and promised he would receive a new PSR without the ACCA enhancement if he pled guilty. He also accused Myers of other omissions and errors, including failing to subpoena witnesses, file suppression motions, and retrieve mental health records, among other things.

The district court denied Myers's motion to withdraw, noting that Defendant had pled guilty to the original indictment and acknowledged during the plea hearing that the ACCA enhancement could apply to him, and that he had later, when represented by Myers, pled guilty to the superseding indictment after acknowledging that he understood the ACCA enhancement. The court also denied Defendant's other *pro se* motions and rejected his argument that he did not have three prior convictions for crimes of violence or serious drug offenses for purposes of the ACCA. Specifically, the court found that Defendant's two Alabama robbery convictions and his conviction for unlawful distribution of a controlled substance qualified as predicate offenses under the ACCA. Accordingly, the court held that the ACCA enhancement applied in Defendant's case.

Defendant subsequently asked to withdraw his plea, arguing that he had never intended to plead guilty to the ACCA enhancement. When the district court denied the request, Defendant accused Myers of coercing him into pleading guilty. The court rejected that argument, and sentenced Defendant to 188 months in prison, the low end of his guidelines range, to be followed by 60 months of supervised release. In an oral order, the court denied the rest of Defendant's outstanding *pro se* motions.

Two days after Defendant's sentencing, Myers filed a motion to withdraw from his representation of Defendant and a request for a different attorney to represent Defendant on appeal. Defendant subsequently filed a *pro se* motion requesting an

appellate attorney "for good cause." Myers filed a timely notice of appeal on behalf of Defendant and again asked for permission to withdraw from the case. The motions to withdraw and appoint an appellate attorney were referred to the magistrate judge, who granted the motions and appointed attorney John Lloyd to represent Defendant on appeal.

Defendant does not challenge any aspect of his conviction on appeal, nor does he argue that he does not qualify for sentencing under the ACCA, as he argued below. Instead, Defendant raises only one issue on appeal: whether the district court erred when it refused to let retained counsel Myers withdraw prior to sentencing. According to Defendant, the district court abused its discretion and violated his Sixth Amendment right to counsel by requiring him to proceed to sentencing with Myers given Defendant's apparent frustration with and legitimate concerns about his representation. We are unpersuaded by Defendant's arguments and, as discussed below, we conclude that the district court acted consistently with Defendant's Sixth Amendment rights and within its discretion when it denied Myers's motion to withdraw. Accordingly, we affirm Defendant's judgment of conviction and sentence.

## DISCUSSION

### I.    Standard of Review

We review the district court's denial of an attorney's motion to withdraw as counsel for an abuse of discretion. *See United States v. Jimenez-Antunez*, 820 F.3d 1267, 1270 (11th Cir. 2016). "A district court abuses its discretion if it applies an incorrect legal standard,

applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Id.* (quotation marks and citation omitted).

## II.    <u>Analysis</u>

"Under the Sixth Amendment, a defendant who does not require appointed counsel enjoys both the right to effective assistance of counsel and the right to choose who will represent him." *Id.* (quotation marks omitted). The latter of those rights encompasses the right both "to hire *and fire* retained counsel" without the need to show good cause[4] and without regard to whether the defendant will subsequently need appointed counsel. *Id.* at 1271 (emphasis in original). As this Court explained in *Jimenez-Antunez*, "[t]he right to choose counsel is incomplete if it does not include the right to discharge counsel that one no longer chooses." *Id.* Furthermore, the erroneous deprivation of a criminal defendant's right to choose his counsel is a structural error that is not subject to harmless error review. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006).

---

[4] This is different from the rule that applies to an indigent criminal defendant with appointed counsel. In that case, the defendant "does not have a right to have a particular lawyer represent him nor to demand a different appointed lawyer except for good cause." *Jimenez-Antunez*, 820 F.3d at 1271 (explaining that good cause in this context "exists where there is a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict" (quotation marks omitted)).

Nevertheless, a defendant's right to his counsel of choice "is not absolute" and "must bend before countervailing interests involving effective administration" of the courts. *Jimenez-Antunez*, 820 F.3d at 1270 (quotation marks and citation omitted). Thus, a court can deny a defendant's motion to remove retained counsel if such removal would "interfere with the fair, orderly and effective administration of justice" in the case. *Id.* at 1271 (quotation marks and citation omitted). For example, denial of a defendant's motion to remove retained counsel is appropriate if the court determines the motion was filed to delay court proceedings or if granting the motion would prejudice the parties. *See id.* at 1271–72. This standard enables the court to "prevent potential manipulation" of court proceedings via strategically motivated motions to remove counsel. *Id.* at 1272.

Applying the above standards to this case, we note as an initial matter that it is unclear from the record whether Defendant sought to exercise his right to terminate Myers's representation. As mentioned, Defendant filed numerous *pro se* motions prior to his sentencing, but he did not in any of those motions ask for Myers to be removed as counsel. Moreover, although Myers verbally moved at the beginning of Defendant's sentencing hearing to withdraw from the case and asked that the hearing be continued for that purpose, Myers did not expressly state that Defendant had asked for his withdrawal. Defendant initially advised the court that he wanted Myers removed from the case because he was dissatisfied with his representation, but he later explained to the court that withdrawal was Myers's idea and that Defendant in fact wanted to

keep Myers as his attorney. Based on the record, it is thus questionable whether the court was required to consider whether Myers's withdrawal from the case was required under the Sixth Amendment. *See id.* at 1271 (noting that a defendant exercises his Sixth Amendment right to counsel of choice when he "moves to dismiss his retained counsel").

But even if Defendant's complaints about Myers can be considered a tacit motion by Defendant to terminate Myers's representation, the district court acted within its discretion when it denied the motion. Again, a criminal defendant has a Sixth Amendment right to terminate retained counsel so long as the termination does not "interfere with the fair, orderly, and effective administration" of justice in the case. *Jimenez-Antunez*, 820 F.3d at 1272 (quotation marks and citation omitted). Under that standard, a district court may deny a motion to terminate retained counsel to prevent the defendant's manipulation of the case. *See id.* Further, a district court has "wide latitude" in balancing a defendant's right to choose his own counsel "against the needs of fairness" in the case and "the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152.

The district court denied Myers's request to withdraw from the case because it determined the request was the latest of numerous attempts by Defendant to delay and obstruct his criminal proceeding and that denial was necessary to prevent any further gamesmanship on the part of Defendant and to ensure the orderly and effective administration of the case. Defendant argues this finding cannot be reconciled with the record, but we disagree.

Indeed, there is ample evidence in the record to support the district court's determination on this issue.

As noted, Defendant was indicted on the one charge asserted against him in the case in 2017. In the ensuing four years, Defendant: (1) violated the conditions of his pretrial bond, (2) entered two guilty pleas, both of which he subsequently moved to retract,[5] (3) insisted on two competency evaluations, both of which indicated he was malingering mental illness, and (4) raised a mental illness defense on the eve of two trials that were scheduled and subsequently continued, without supporting evidence and in contradiction to the results of the mental health evaluations in the record. In the meantime, Defendant cycled through four attorneys and, as the Government points out, filed over 25 *pro se* motions, objections, and notices—most of them frivolous and several of them asserting unsubstantiated and frequently outlandish attacks against his counsel and evaluating psychologists, the prosecutor, and court personnel.

Ultimately, Defendant's unduly protracted criminal proceeding culminated in a May 2021 sentencing hearing during which

---

[5] As noted *supra*, the district court allowed Defendant to withdraw his first guilty plea, not because Defendant's grounds for doing so were meritorious, but because the Government had superseded the indictment in response to the Supreme Court's *Rehaif* decision, which held that § 922(g) requires the Government to prove that a defendant knew he was prohibited from possessing a firearm. Defendant ultimately pled guilty to the superseded indictment before then trying to retract that plea, after which he ultimately decided that he preferred a guilty plea to a trial.

Myers belatedly asked to be removed from the case.  As Myers acknowledged, his withdrawal at that point would have necessitated yet another continuance.  Given the numerous continuances that had already occurred due to Defendant's dilatory and obstructive tactics to that point, the court was well within its discretion to deny Myers's request to withdraw and to proceed with Defendant's sentencing.  *See Jimenez-Antunez*, 820 F.3d at 1272.

Defendant argues the district court nevertheless erred when it denied the request because there was evidence that Myers was not providing competent representation and that his relationship with Defendant had broken down. In support of the former, Defendant cites counsel's failure to produce witnesses at the April 15, 2021, hearing to support his mental health defense and his objection to being sentenced under the ACCA.  Contrary to Defendant's argument, neither of these circumstances is evidence of ineffectiveness on the part of Myers.  The evidence in the record suggests that Myers was not able to locate any witnesses who could provide testimony at the April 2021 hearing to support a mental health defense, which is not surprising given the results of two mental health evaluations completed during the relevant time and indicating that Defendant was malingering and that he did not suffer from a serious mental disorder.  As to being sentenced under the ACCA, Defendant confirmed before he pled guilty that his attorney had explained this possibility and the court explained it to Defendant again during the hearing.  Finally, Defendant's claim that his relationship with Myers had broken down was, like the similar claims he made with respect to three previous attorneys, unsubstantiated.

Moreover, Defendant equivocated on this point later in the sentencing hearing and ultimately confirmed that he did in fact want Myers to remain as his attorney.

In short, there is no basis in the record upon which to overturn the district court's conclusion that Defendant's request to remove Myers from the case should be denied in order to prevent further manipulation of the proceedings by Defendant and because allowing Myers to withdraw and substituting alternate counsel—who at that point would have been Defendant's fifth attorney—would "interfere with the fair, orderly, and effective administration" of the case. *See Jimenez-Antunez*, 820 F.3d at 1272 (quotation marks and citation omitted). As such, the court's denial of Myers's motion to withdraw was within its discretion and consistent with the Sixth Amendment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's judgment of conviction and sentence.